THE STATE OF MISSISSIPPI *vs.* EDWARD L. FARISH.

If an agent of the state duly authorized, enter into contract with an individual for the performance of labor for a public building, and the contractor is hindered and delayed, and suffers loss in consequence of the failure on the part of other contractors to furnish necessary materials, and the acts and negligence of the agents and officers of the state, the state is liable to the contractor for the damage actually sustained by him.

Under the Act of March 5, 1846, (Hutch. Dig. 786, art. 28,) providing for the trial of issues of fact, in cases where the state is the defendant, by juries to be impanelled for that purpose in the chancery court, the verdict of the jury is placed upon precisely the same footing with verdicts in a court of law.

Where upon an issue of fact tried by a jury before the chancellor, in a case against the state, a verdict was rendered and a motion for a new trial made and overruled, but no bill of exceptions filed to the decision of the court, nor the evidence in the cause placed upon the record, the appellate court cannot entertain an exception to the ruling of the court below, predicated upon an assumed insufficiency of the evidence to support the verdict.

Three issues of fact were submitted to a jury in the chancery court: 1. Whether a certain contract was made between the complainant and the state; 2. Whether, if the contract was made, the complainant, by the act of the state, was prevented from performing the contract on his part; and, 3. If the contract was made, and the complainant was prevented from performing it by the act of the state, what amount of damage, if any, did the complainant sustain thereby? The jury found a verdict in this form: " We the jury find for complainant, and assess his damages at $ 11,201.60." *Held*, that this was a substantial finding by the jury of each and all of the issues submitted to them in favor of the complainant.

The appellate court cannot notice the objection that the court below erroneously refused to instruct the jury as requested by the appellant, where the record does not show that instructions were given or refused at the instance of either party.

Where a bill of exceptions embraces but a part of the testimony of a witness, and the record does not contain all the evidence adduced on the trial, the appellate court will not undertake to determine whether the court below erred in overruling an objection to the testimony of the witness, as set out in the bill of exceptions.

The statements of a complainant, addressed to the authorized agent of the defendant, in reference to the matters of fact in controversy in the suit, and

The State of Mississippi *v.* Farish.

not disputed or denied by the agent, are evidence for the complainant; as the silence of the agent must be regarded as an implied admission of their truth.

It will be presumed that inferior courts have not erred, until the contrary is clearly shown.

Questions not raised in the court below, as grounds for the granting of a new trial, would be noticed with great reluctance by the appellate court.,

On appeal from the superior chancery court; Hon. Stephen Cocke, chancellor.

The record shows that Edward S. Farish filed his bill in the superior court of chancery on the 10th of June, 1836, against the state, in which he says: That on the 17th of November, 1833, he made a contract with John Lawrence, who was then state architect, and acting for the state for the doing of the carpenter's work of the state capitol, then about to be erected, agreeing, on his part, to do the work as specified in said architect's advertisement, and as he should thereafter direct; and that he, complainant, was to furnish all the lumber necessary to the completion of the work, which was to be finished by the 1st of January, 1836, and was to receive therefor $33,000. That he entered into a bond to this effect, which is made exhibit A, and shows, as exhibit B, a certificate of said Lawrence of the contract.

That immediately after this contract was made, said Lawrence made a contract with Phillips & Rothrock, for the furnishing of the timber required to build said capitol, which, by agreement, complainant was to furnish for about $10,000, and took a bond from Phillips & Rothrock, as required by law for the performance of this contract; charges that by this agreement, he was discharged from his contract, as far as relates to the timber; that at the time of making his said contract, said architect agreed to pay one third of the money stipulated, in the month of July next thereafter, and the balance in one and two years; that, but for this agreement, he would not have made the contract; that, at that time, he was profitably engaged in his trade in Alabama, but at once removed to this state, relinquishing his said business at great sacrifice.

That to carry on the work, he engaged ten journeymen carpenters and apprentices, and brought them to the town of Jackson, and avers his readiness to do the work as agreed upon in his contract; alleges that by the negligence of the state's officers, and other contractors, complainant was kept idle and at great expense for a long time, and was never furnished an opportunity to carry out his contract, but was hindered and delayed for want of timber and materials, and by the delays of other contractors on the building; that the money due him in said July, when the time arrived, was refused; finally his said contract was by the state annulled, without his consent, and other contracts then about to be made for the same work, and without any compensation given to him; prays for an issue *quantum damnificatus*, and for relief generally.

Exhibit A, on 4th page of record, is a bond of complainant for $60,000, the condition of which is properly stated in the bill, except that the bond calls for the completion of the work in June, 1836, instead of January, and that there is in it no stipulation for the payment of the money sooner than the work is completed.

On the 11th July, 1836, the attorney filed a general demurrer. On the 6th December, 1836, this demurrer was sustained and a decree dismissing the bills rendered, and appeal prayed and granted. At December term, 1839, the appellate court reversed the decision and remanded the cause.

On the 5th June, 1840, the attorney-general filed his answer, negativing the allegations of the bill, as to the performance of the contract by complainant, and requiring proof as to all others.

On the 19th June, 1840, the chancellor made a decision, ordering the following issues:

1. Whether the contract was made, as stated and alleged in the bill between the complainant and John Lawrence, as the architect, on behalf of the state of Mississippi.

2. If said contract was made, as stated in said bill of complaint, was the said complainant hindered or prevented from performing the said contract on his part by the act or acts

41*

of the said John Lawrence, acting on behalf of the state of Mississippi?

3. If the said contract was made, as above stated, and said complainant was hindered or prevented from performing the said contract on his part to be performed, by the act or acts of said John Lawrence, acting as architect as aforesaid, or by a failure on the part of the state to make payment to the complainant, agreeably to said contract, then the jury shall assess the amount of the damages (if any) which the complainant hath sustained by reason thereof, and the amount (if any) that may be due and owing to the complainant.

And referred said issues to a jury of Rankin county, with permission to the parties to introduce all legal testimony, either oral or written.

January 8th, 1842, an agreement to remove the trial of the issue into the superior court of chancery.

The chancellor sends out said issues to Hinds county court, February 9th, 1842.

On the 16th March, 1846, the issues were remanded back to be tried in the superior court of chancery.

On 4th March, 1847, in the trial of said issues, a juror was then withdrawn and leave given to file an amended supplemental bill, in which complainant alleges that the contract made with Phillips & Rothrock, by the state, was so made by and with the consent of complainant, and with the express view of modifying complainant's contract, and to relieve him from so much of his contract; and that Phillips & Rothrock were regarded as contractors for the furnishing the lumber for the capitol in the room of complainant.

On the 28th December, 1847, the state filed her answer and cross-bill; admits the making of the contract of complainant, but avers that, in want of capital and credit, complainant failed to comply with his contract and forfeited it; denies that by the making of the contract with Phillips & Rothrock, the complainant was released from his contract to furnish the lumber or the legal consequences of his forfeiture of the contract. Denies that Lawrence agreed to pay any sum or sums of money, other than specified in his contract; admits that

complainant lived in Alabama, but denies that he had any profitable employment there, or that he abandoned any contract or made any sacrifice to take the present contract; avers that he had nothing to sacrifice; denies that complainant was at all times ready and willing to carry out his contract, but avers that he refused and neglected to do so; that he became discontented with his contract, and refused to obey the directions of John Lawrence, the architect, to proceed, and set on foot a scheme to have Lawrence removed from office, and by his procurement one William Nichols was induced to visit Jackson for the purpose of taking the place of Lawrence; that after Nichols looked at the building he said he did not approve of the plan of the building, and declined to have any thing to do with it, as he would have to take down all that was then built, but complainant insisted on his becoming the architect, saying he would rather lose his contract with Lawrence than to proceed with it; that he would run the risk of getting a new contract on a new plan; that under the persuasion of Farish, Nichols applied for the office of architect, recommended by Farish and others; that Lawrence was removed and Nichols appointed, and that complainant well knew that Nichols would have the building taken down and erected on another plan; that Nichols made new plans, and that complainant frequently saw and approved them; that whilst they were preparing, the work on the capitol was suspended by the governor; that complainant, by his advice to the governor, his hostility to Lawrence and friendship to Nichols, used his influence to have the work suspended; that Farish used his influence to have Nichols' new plans approved by the legislature; being done, new proposals or contracts were made; complainant made a bid for a portion of the carpenter's work; it was accepted, and a bond in accordance with the law requested of the complainant for the performance of the work, and was requested to execute it, but he utterly refused and declined taking the contract previously accepted.

On the 10th January, 1848, complainant filed his anwer to the cross-bill of the state; says that when he returned to Jackson with his mechanics to perform his contract, he found the

citizens complaining bitterly that Phillips & Rothrock, who had built a mill to saw the lumber, had not been employed for that purpose; that Lawrence was embarrassed by this state of things, therefore he consented that Phillips & Rothrock might be substituted in his room for furnishing the lumber, and that he be released from that part of his contract; that Lawrence declared he would take the responsibility of so releasing him, and that the governor assured Lawrence that it would not affect the contract of the complainant only to the extent of the furnishing of the lumber; that certain timbers directed to be put in the building, by said Lawrence, were not so done by the complainant, because the timbers were not furnished to complainant; admits that a contract under the new plan was tendered to him, and considering its terms ruinous, he rejected it. The remainder of the answer is a full denial of the allegations of cross-bill, or a reiteration of the bill and supplement.

2d day of February, 1850, the issue tried and verdict of the jury for $11,201.60, in these words: "We the jury find for complainant, and assess his damages at eleven thousand two hundred and one dollars and sixty cents."

9th March, 1850, there is an order stating incidentally that an order had been made resembling a motion to set aside the verdict of the jury and for new trial, and gives until next term of the court to file a bill of exceptions.

11th December, 1850, the chancellor signs a final decree for the sum of the verdict.

19th December, 1850, appeal prayed and granted. Agreement of counsel to extend the time for filing the bill of exceptions until June term, 1851.

On 13th February, 1850, a bill of exceptions was filed to the decision of the chancellor.

*Adams & Dixon,* for plaintiff in error,

Contended that the decision of the court below, and the verdict of the jury was error; and cited Hutch. Code, 769; *Penrice* v. *Cocks,* 1 How. 227; *Beene* v. *Lindsey,* 2 S. & M. 581; *Pritchard* v. *Myers,* 3 Ib. 42; *Drane* v. *Hilzheim,* 13 Ib. 336; *Carraway* v. *McNiece,* Walk. R. 538.

A special verdict, which does not find the material facts, is bad, and it must find facts, not the evidence of facts. *Hun* v. *Field*, Sel. Cases, 376; *Bertrand* v. *Morrison*, Breese, R. 235; *Brown* v *Ralston*, 4 Rand. 504.

A verdict is bad if it varies from the issue in a substantial manner, or if it find only a part of that which is in issue. *Patterson* v. *United States*, 2 Wheat. 221; 1 Wash. 272; *Brown* v. *Helligar*, 2 Hill, S. C. Rep. 447; *Middleton* v. *Quigley*, 7 Halst. 352; *Anderson* v. *Anderson*, 4 Hayw. 255.

The rule is settled, that oral testimony will not be received to prove a written contract, without showing the loss of the writing. 1 Greenl. Ev. p. 111, 112, 315, 316.

The court ought to have admitted the testimony of King. *Fleming* v. *Gilbert*, 3 Johns. 528; *Delacroix* v. *Bulkley*, 13 Wend. 71; *Reed* v. *Mc Grew*, 5 Ham. 375; Chitty on Con. 112.

*D. C. Glenn*, for defendant in error.

The state is estopped from any objection to the form of the verdict; she should have assailed it when tendered. 13 S. & M. 39.

Not a single exception was raised during the whole proceeding of the trial in the court below, and this court will hear none now. 3 How. 42; 4 Ib. 506; 5 Ib. 503, 634; 2 S. & M. 232, 527; 4 Ib. 207, 312; Ib. 113; 7 Ib. 197, 319, 730.

A bill of exceptions must show the precise ground of exception. 3 How. 422; 8 S. & M. 197.

For authority for the charge asked in the court below, see Chitty, Cont. Am. Ed. 340, and cases cited.

Mr. Chief Justice SMITH delivered the opinion of the court.

This bill was filed in the superior court of chancery against the state of Mississippi, by the appellee.

Its object was the recovery of damages alleged to have been sustained by complainant, in consequence of the non-performance of a contract on the part of the state, which had been entered into by her legally constituted agent, with said complainant.

A very brief statement of the allegations of the bill and the facts of the case, will be sufficient to a proper understanding of the questions upon which we may have to pass.

In November, 1833, as it is alleged in the bill, the appellee entered into a contract with John Lawrence, who was then architect for the public buildings of the state of Mississippi, by which he became bound to furnish all of the lumber or wood material, and to do all of the carpenter's work, which would be required to be done in the construction of the state capitol, which it was then in contemplation to erect. For furnishing the lumber and the performance of the carpenter's work, the appellee was to receive as full compensation the sum of $33,000.

Some time after this contract had been entered into, the architect, Lawrence, entered into a contract with Phillips & Rothrock, by which they were to furnish the lumber which would be required in the building of the capitol. This agreement was made with the express assent of the appellee, and was designed as a modification of his contract, by which he would be relieved from his obligation to supply the lumber. The architect took from Phillips & Rothrock a bond conditioned for the due performance of their agreement.

The appellee, in order to be prepared for a prompt and faithful performance of his agreement with the state, engaged the services of a number of mechanics, whom he brought to Jackson. He was bound for their board and wages, and was always ready to comply with the stipulations of his contract. But avers he was unable to do so in consequence of the want of material, of the failure of other contractors, and of the delays, hindrances, and obstructions caused by these means, and by the acts and negligence of the officers of the state. And finally that the contract, without his consent, was annulled by the state.

In consequence of all of which he had suffered great wrong, and sustained heavy pecuniary damage. An issue *quantum dammificatus* and general relief are prayed for in the bill. After various proceedings had in the cause, which it is not material to notice, the state by the attorney-general filed her answer in

1840. The answer denies performance on the part of the appellee, and requires this proof as to all matters alleged in the bill.

Upon the filing of this answer, the chancellor ordered the following issues of fact to be submitted and referred to a jury, namely :

1. Whether the contract was made as stated in the bill between the complainant and John Lawrence, as the architect on behalf of the state of Mississippi?

2. If said contract was made, as stated in said bill of complaint, was the said complainant hindered or prevented from performing the said contract on his part, by the act or acts of the said John Lawrence, acting on behalf of the state of Mississippi?

3. If said contract was made as above stated, and said complainant was hindered or prevented from performing said contract on his part to be performed, by the act or acts of the said John Lawrence, acting as architect as aforesaid, or by a failure on the part of the state to make payment to the complainant agreeably to said contract, then the jury shall assess the amount of damages (if any) which the complainant hath sustained by reason thereof, and the amount (if any) that may be due and owing to the complainant?

These issues were sent out to be tried in the counties of Rankin and Hinds, and after many ineffectual efforts to obtain a decision upon them by a jury, they were remanded into this court by the chancellor. At length, after many delays and various interlocutory orders, which, however, produced no material change in the state of the controversy, they were submitted to a jury empanelled before said court, who rendered a verdict in the following form, namely, "We the jury find for complainant, and assess his damages at eleven thousand two hundred and one dollars and sixty cents."

A motion was made to set aside the verdict, and for a new trial, which having been overruled and the verdict approved, a final decree was rendered for the appellee.

This cause comes before us by appeal, and we are urged to reverse the said decree for errors alleged to have been committed by the chancellor, in overruling the motion to set aside

the verdict, in refusing to instruct the jury on the trial of the issues, as requested by the appellant's counsel, and in permitting improper evidence to be submitted to the jury.

1. The verdict in this case, according to the statute of the 5th March, 1846, (Hutch. Dig. 786, art. 28,) is placed precisely on the same footing with verdicts rendered in courts of law.

On the trial of the motion, there was no bill of exceptions filed to the decision of the court; nor was the evidence which went to the jury, and on which they based their verdict, placed upon the record. Hence, upon a well recognised rule of this court, we can notice no exception to the ruling of the court, predicated on an assumed insufficiency of the evidence, to sustain the finding of the jury. The objection, however, mainly relied on, is, that the jury having found only a part of the issues submitted to them, their verdict was insufficient to sustain the decree of the chancellor.

As we have before seen, the jury will be required to ascertain whether the contract had been entered into as alleged in the bill; if so entered into, whether the complainant had been hindered or prevented from performing the contract on his part, by acts of the state architect, or the failure of the state to make payment to complainant, agreeably to the terms of the same. If all of these facts should be found by the jury, then they will be required to assess the damages (if any) which had, by reason thereof, been sustained by the complainant.

If the jury had found that the contract had been made as alleged by the complainant in his bill, they could not have assessed the damages unless they had found the additional fact, also, that complainant had been hindered and delayed in the performance thereof. And it is manifest that the jury could not have found that the execution of the contract had been hindered or delayed by the architect of the state, unless the existence of the contract, as alleged in the bill, had been also established to their satisfaction. As it was, they " found for the complainant, and assessed his damages " at the sum above mentioned. Hence, their verdict must be regarded as a substantial finding of each and all of the issues submitted to

them, in favor of the complainant. The first objection is therefore unsustained.

2. The record does not show that instructions were given or refused at the instance of either complainant or defendant. We cannot, therefore, notice the objection, that the chancellor erroneously refused to charge the jury as requested by the appellant.

3. We shall, in the next place, notice some of the objections urged to the introduction of evidence on the part of the appellee. The second bill of exceptions shows that a witness was offered, who proved that " He understood, from various conversations between Lawrence, the architect, and complainant, that complainant had given up that portion of his contract which bound him to furnish the lumber, and that Phillips and Rothrock were substituted in his stead; in these conversations complainant regretted that he had consented to give up that portion of his contract, and complained that he was thereby delayed in the prosecution of the carpenter's work for the want of lumber. Witness also stated he knew that complainant was delayed by reason of the failure of Phillips and Rothrock to comply with their contract."

It is insisted that this evidence should have been excluded, because, if admitted, the statements of the complainant would have been made evidence for himself.

The bill embraces but a part of the testimony of this witness, and it is not pretended that the record contains the whole of the evidence adduced on the trial. It is, therefore, impossible for us to determine with certainty that the chancellor erred in overruling the objection to its introduction. For were it conceded that this fragment of the testimony, as it appears in the bill of exceptions, disconnected from the remainder of the evidence before the jury, should have been rejected, it does not therefore follow that it was not perfectly competent, when submitted in connection with the whole of that evidence. Indeed, the opposite conclusion necessarily follows, from the presumption of law, that the decision of the court was correct on another principle. But we think the objection was untenable for another reason. These statements

of complainant were made in reference to matters of fact involved in this controversy. They were addressed to the authorized agent of the defendant, and by him not disputed or denied. They were, therefore, evidence in the cause, as the silence of Lawrence must be regarded as an implied admission of their truth. *Balturs* v. *Sellers*, 5 Har. & John. 119; *Coe* v. *Hutton*, 1 Serg. & R. 398; *Hendrickson* v. *Miller*, 1 Rep. Const. Court, 296.

A similar observation may be applied to the objections made to the introduction of the testimony of another witness, set out in the fourth bill of exceptions. The statement of the witness was, " That Lawrence and complainant told witness that Phillips and Rothrock had been employed to furnish the lumber, and that complainant had been released from that part of his contract by Lawrence."

Another exception to the evidence contained in this bill seems equally untenable. We cannot with certainty know whether the questions propounded to the witness were proper or improper, or that his answers were irrelevant or incompetent evidence. If the evidence objected to were introduced, as suggested, to explain or rebut testimony adduced by the defendant, it is readily perceived that it might have been perfectly proper to have admitted it; and such conclusion must follow, as we are bound to presume that the chancellor did not err until the contrary is clearly shown. Moreover, the statement of the witness, against which the exception is particularly pointed, is simply affirmative of a fact distinctly admitted by the answer, to wit : that Phillips and Rothrock had been employed by the architect to furnish the lumber required in the construction of the capital.

We deem it unnecessary to notice further the exceptions, taken to the admission or exclusion of evidence offered before the jury, and shall close our examination of this case with a single remark in reference to another objection to the finding of the jury, upon the issues submitted to them.

The objection is this, that these issues were framed in reference to the matters in controversy, as presented by the original bill and answer; whereas the amended and supple-

mental bill filed in 1847, subsequent to the order of the chancellor, directing the issues of fact to be tried by a jury, with the answer and cross-bill filed thereto by the attorney-general, as it is contended, has materially altered the state of the controversy, whereby the issues previously ordered were rendered inapplicable.

After a careful examination of the record, we do not think that the objection is well taken in point of fact. The answer and cross-bill filed by the attorney-general, has not, in our opinion, produced any such alteration in the matters put at issue, by the original bill and the answer thereto, as to dispense with the necessity of a verdict upon the issues, or to render them inappropriate.

It is also to be remarked, that this objection was not assigned as one of the grounds upon which a new trial was claimed in the court below. Nor does it appear from the record that it was brought to the attention of the chancellor on the argument of the motion. We would, therefore, with great reluctance, entertain the exception in this court.

. Let the decree be affirmed.

YERGER, Judge, having been of counsel in the court below, gave no opinion in this cause.