## SMITH v. VAIL.

(Supreme Court, Appellate Division, First Department. July 17, 1900.)

1. LIQUIDATED DAMAGES—PROOF OF ACTUAL DAMAGE.

     Where the contract for the erection of a building provided liquidated damages for delay in completion, the owner was properly refused permission to show actual damage for such delay.

2. BUILDING CONTRACT — DELAY—ACTS OF OWNER AND INDEPENDENT CONTRACTORS.

     In an action to foreclose mechanic's lien, where the owner counterclaimed for liquidated damages for delay in completion, plaintiff's evidence showed specific delays caused by defendant or his orders, and by the failure of independent contractors to complete their part, which delayed him. Evidence for the defense was less specific as to the amount of delay caused, but admitted that if the delay had been one-third less no objection would have been made. The architect corroborated the facts of plaintiff's evidence. and after the building was complete certified that the builder was entitled to the balance of the contract price. Held, that the evidence supported a finding by the trial court that the plaintiff was not chargeable with the delay.

3. SAME.

     Where the contract for the erection of a building provided for completion by a given time, time being of the essence, and for liquidated damages for delay, unless the delay were caused by act of God or of the public enemy, such provision does not exclude proof, on foreclosure of mechanic's lien where counterclaim is made for delay, of acts of defendant and independent contractors causing delay to plaintiff.

Appeal from special term.

Action by James Baker Smith against Mary L. Vail to foreclose mechanic's lien. From a judgment for plaintiff entered on decision of special term, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and O'BRIEN, JJ.

J. F. Harrison, for appellant.

Jacob F. Miller, for respondent.

O'BRIEN, J. The suit was brought to enforce a mechanic's lien for $8,285.06, a balance claimed to be due for work performed by plaintiff on defendant's premises 773 Broadway, between May 10 and December 12, 1898, under a contract entered into between the parties in April, 1898. By the contract the plaintiff agreed "to furnish all the material, and do　*　*　*　all the mason work, carpentry, iron work, and electric work required in the erection, completion, and finishing" of defendant's building, in a good and workmanlike manner, in accordance with the specifications, to be wholly and fully completed and finished by the 1st of August, 1898, in consideration of $27,630, of which $10,000 was to be paid when the roof was on, $10,000 when floors were laid and rough plastering finished, and $7,630 when the contract was entirely completed. The contract also provided that the architects were to be sole arbiters; that time was "of essence"; and that unless failure on the part of the plaintiff to complete by August 1, 1898, "shall result from the act of God or the public enemy," the plaintiff should forfeit the sum of $50 a day as liquidated damages for failure to complete the building within the time specified. The plaintiff alleges in his complaint that he "duly fulfilled and performed all the conditions of said contract on his part to be performed within the time therein specified except wherein he was delayed by changes ordered by the architect and by other contractors for whom he was obliged to wait, and over whom he had no control, their work not being included in his contract; that he was entitled to receive, in addition to the contract price, $655.06 for extra work performed by him, and that but $20,000 had been paid him, leaving $8,285.06, the amount of his lien, which sum he has demanded, but has not been paid, although on January 9, 1899, the architect gave him a certificate stating that he was "entitled to the final payment　*　*　*　in accordance with the terms of the contract, and in addition the sum of five hundred and seventy-one and ⁶³/₁₀₀ dollars ($571.63) for extra materials furnished and labor performed." The answer, though admitting that the building was finally completed in accordance with specifications, and stating that the sum of $571.63 was agreed upon for extra work, and that the time to complete the work was verbally extended from August 1st to August 15th, alleges that the building was not completed till December 12th, and that such delay was not due to the act of God or the public enemy, but to the plaintiff, so that the defendant is entitled to a counterclaim against the plaintiff under the contract of $50 a day for the delay, or $5,950; and also a further sum of $4,500,

which was incurred by the defendant in procuring other premises between August 15th and December 12th. The plaintiff's reply asserts that no part of the delay was justly attributable to him.

There was, of course, no merit in the second counterclaim, as the parties had already stipulated for liquidated damages, if any. As to the first counterclaim, and the question of the plaintiff's right to recover, there were presented questions of fact which were resolved by the special term in plaintiff's favor, and it is necessary, in stating our conclusions on this appeal, to review briefly the evidence.

The plaintiff testified that in the prosecution of the work he had contracted to do there was a delay soon after the work began on account of a beam in a party wall over which there was a dispute with the adjoining owner, which lasted for more than a month, and the architect directed him not to take down the wall or beam; that he was again delayed three or four days by not receiving the boiler flues from the steam-heating company employed by the defendant; that there was at least two days' delay because the plumbers, over whom he had no control, did not make connection with the sewer in Broadway; that the boilers occasioned a delay of nearly a month, as they came two weeks late, and then were left in the way before being set, until which time the mason work could not be done; that the architect ordered cornices different from those contemplated, and the details of carpenter work were not received in time; that other new work as to metal ceilings was decided upon, which hindered him; that on July 2d he wrote the architects that "all the sidewalk and store-entrance work * * * is delayed because the engines have not been delivered. These engines must be lowered to the basement at the area, which is covered with patent lights. The patent lights are now fitted in place, but cannot be set, because that would shut out the engines. The patent lights not being set prevents laying the sidewalk, and also finishing up the doorway. Can you not hurry the engines to the building at once?" The plaintiff further said: That, when the engines finally arrived, the men broke the patent-light frame by rolling the engines over it. That changes were made in the elevator doors, and the elevator men punched out the plastering. That time was lost because the hardware did not arrive promptly, and because the architects interfered with his men, so that he wrote them on August 26th: "I have left nothing undone * * * to hurry the completion of the building. But my efforts are in many instances made useless by having the subcontractors countermanded by yourself. O'Connor wishes all the hardware furniture delivered at once to him at the building." That the Electric Equipment Company retarded him, because they were awaiting defendant's instructions as to a switchboard. That he had as many men at work every day as he could usefully employ. The plaintiff's testimony was corroborated by that of his associate, Mr. Atkins, who made the estimate on the plans; by Mr. Garrigan, his bricklayer and foreman mason; by the carpenter, Mr. O'Connor, who said the hardware did not come till August 31st, and his work was dependent upon receiving it; by Mr. Patterson, whom he employed as a superintendent; and also by the letters which are in evidence, sent to

the architects by the plaintiff, requesting them to hurry along the other work, so that his own might proceed. In behalf of the defendant, Mr. Mowbray, the architect, testified that he was on the premises nearly every day; that there was a dispute as to the party wall, but he did not think that delayed the work; that the masonry could not be done till the boilers were set, which took about two weeks, but that this did not materially impede the progress of the plaintiff, who, as soon as possible, began his work; that, as to the flue pipes, there might have been one or two days' delay by the steam-fitting company, and that by putting the pipes in the cellar there was some portion of the carpenters' work as well as the plasterers' work kept back; that, as soon as the contract was given, Mr. O'Connor came to him for details, and others were furnished later, but practically all by the middle of July; that he did give Mr. O'Connor some orders to stop work on account of the question as to where the power belts were to be, and the delay was a week or 10 days; that the steam-heating company possibly retarded the plaintiff some few days; that the vault lights could not be set until the engine, which did not arrive for several days, was in the building, and the store front could not be put in till the patent lights were set; that the metal ceilings might have delayed the work; that the building department required wire glass in the elevators, and in some respects the floors were incumbered by the plumber's materials, and the steam-fitting company did not leave the place in good condition; that he had trouble with the switchboard, but this did not materially interfere with the work, although the board was not delivered till October; that on August 15th the cabinet work was incomplete, as was the patching of the plastering, the mosaic tiling, the store front, and the wash-room floor and partition; that the steam fitters, the plumber, and the elevator men, who were other contractors, did work after August 15th, the elevators not being ready till October; that the plaintiff "did all that he had to do right away after it was ready for him," and he thought the defendant began to use the premises about November 1st. William Bartholomew, who had looked after things in general for the defendant at the building, testified that on August 15th the store front was not in, nor the basement finished, and the painting and plastering and tiling not completed; that, if the material had come faster, more men could have been at work; that the steam fitters had to complete their work after August 15th, and did not finish until September 1st. The defendant's husband testified that on August 15th the work was about half done, and nothing was completed, but that it would have been satisfactory had the building been finished by October 15th.

From this evidence it will be seen that the plaintiff's explanation of the delay was founded on facts, and the question is reduced to a determination of whether he accounted for the entire period up to December 12th. Even the defendant's husband admits that no objection would have been raised had the building been completed by October 15th, over two-thirds of the time for which forfeiture is asked, and it appears that the defendant was in possession on November 1st. Mr. Vail asserts that on August 15th the building was

but half completed, whereas the other of the defendant's witnesses enumerate a few items of unfinished work. And it is not disputed that contractors for whom the plaintiff was obliged to wait did work in the building after that time. The architect not only corroborates the testimony of the plaintiff and his witnesses as to the facts (though he disagrees in his deductions), but states, both with regard to Mr. O'Connor and Mr. Smith, that work was begun and prosecuted as speedily as practicable. This, in connection with the certificate of the architects, who by the contract were to be sole arbiters, supports the plaintiff's claim that, without unnecessary delay, he did all the contract called for on his part. While it is difficult to determine who was responsible for every day of the delay, since it is impossible to tell from the testimony whether "delay" had reference to the entire work or some part of it, it is reasonably certain that for most of the time the plaintiff was not responsible, and from such testimony the inference is fairly supported, as found by the special term, that plaintiff is not chargeable therewith.

It was urged, however, during the trial, and again on this appeal, that evidence of delay, other than such as was "due to the act of God or the public enemy," was incompetent, in view of the provision of the contract. But this provision must be taken to refer solely to performance of the work which the plaintiff by his agreement undertook to do. As to that, there is the strongest evidence that he proceeded with diligence. He did not warrant that the other contractors would duly perform their work, that the defendant would not enter into disputes with neighboring owners, or that the architects would make no changes or otherwise interfere with him. It appears that outside of the defendant's own acts and those of the architects, for which the plaintiff was in no way responsible, the delay in finishing the building was occasioned by independent contractors. They were not plaintiff's agents, nor was he responsible for their delays. They were employed by the defendant, and as he did not so control them that the plaintiff's work, which was dependent on theirs, could be done, he alone must suffer the consequences.

We think, therefore, that the judgment appealed from should be affirmed, with costs. All concur.