*562
 
 Day, J.,
 

 concurring in part. In view of the fact that all members of the court participating in this case do not concur in each of the various propositions set forth in the foregoing
 
 per curiam,
 
 it is deemed advisable to state the reasons and authorities relied upon by the members of the court concurring in the various propositions decided.
 

 The first group of offers to prove, made by the plaintiff below, involved the alleged error of the trial court in excluding the evidence by which plaintiff sought to show that the defendant interrupted plaintiff’s access to the site of the work and interfered with the bringing of materials to the job, by the construction of certain tracks, embankments, and a certain ditch upon the premises, without advising plaintiff, prior to the execution of the contract, that it was about to do so.
 

 The specifications relative to the construction of this work were made a part of the contract between the parties by virtue of the following language:
 

 “In accordance with memorandum hereto attached and all as shown on the drawings and described in specifications prepared by the Osborn Engineering Company of Cleveland, Ohio, engineers, which drawings and specifications are identified by the signature of the parties hereto, and become hereby a part of this contract.”
 

 Said specifications, among other things, included the following provision:
 

 “The bidder shall, before presenting his proposal, visit the existing building, and thoroughly familiarize himself with the scope of the work in connection therewith, and the conditions under which it will have to be executed.
 

 
 *563
 
 “Lack of such knowledge will not be accepted as a valid excuse for granting extra compensation, or for failure, neglect, or refusal to perform any cr all of the work in this contract
 
 *
 
 * *.
 

 “There is a switch from the Erie Railroad entering the property which may be used for the receipt of materials,” etc.
 

 The owner having thus required the contractor to visit the premises in question, to familiarize himself with the scope of the work in connection therewith, and provided that lack of knowledge of such conditions would not excuse the contractor for failure, neglect, or refusal to perform any or all of the work in the contract in question, we are of opinion that the owner thus made such view, and the conditions then existing, subject to reasonable change incidental to the proposed building, impliedly a part of the contract in question. The advantages accruing to the owner in receiving and accepting a bid after a thorough examination by the contractor of the premises in question are so evident that we regard the same as essentially part of the contract. That this bid was made and accepted in the light of the conditions existing at the time of the view in question, as to the reasonable continuation thereof, subject to the proposed building operations, leads us to the conclusion that the testimony relative thereto should have been received.
 

 In support thereof, the following cases and authorities may be cited: 13 Corpus Juris, 558;
 
 Booth
 
 v.
 
 Cleveland Rolling Mill Co., 74 N.
 
 Y., 15;
 
 Lawler
 
 v.
 
 Murphy,
 
 58 Conn., 294, 20 A., 457, 8 L. R. A., 113;
 
 Minneapolis Mill Co.
 
 v.
 
 Goodnow,
 
 40 Minn., 497, 42 N. W., 356, 4 L. R. A., 202 (see note 203);
 
 *564
 

 Ben C. Jones & Co.
 
 v.
 
 Gammel Statesman Pub. Co.,
 
 100 Tex, 320, 99 S. W., 701, 8 L. R. A. (N. S.), 1197;
 
 Great Lakes & St. Lawrence Transportation Co.
 
 v.
 
 Scranton Coal Co.
 
 (C. C. A.), 239 F., 603; 4 Page on Contracts (2d Ed.), Section 2042; 3 Williston on Contracts, Section 1293;
 
 United States
 
 v.
 
 Bethlehem Steel Co.,
 
 205 U. S., 105, 118, 27 S. Ct., 450, 51 L. Ed., 731; note to
 
 Chicago Auditorium Assn.
 
 v.
 
 Corporation of Fine Arts Building,
 
 18 Ann. Cas., 257. The judgment of the Court of Appeals in holding this testimony admissible is ¿f-firmed.
 

 The second and third groups of offers, 7 to 10 and 11 and 12, inclusive, relate to the interference with plaintiff’s work, caused by the unreasonable delay of other contractors employed by the defendant, to-wit, the National Iron & Wire Company and the Globe Automatic Sprinkler Company.
 

 The construction of Articles VII and VIII of the contract being involved, the same are as follows:
 

 “Article VII. Should the contractor be delayed in the prosecution or completion of the work by the act, neglect, or default of the owner, of the engineers, or of any other contractor employed by the owner, upon the work, or by any damages caused by fire, lightning, earthquake, cyclone, or other casualty for which the contractor is not responsible, or by strikes or lockouts caused by acts of employees, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all the causes aforesaid, which extended period shall be determined and fixed by the engineers; but no such allowance shall be made unless a claim therefor is presented in writing to the engineers
 
 *565
 
 within forty-eight (48) hours of the occurrence of such delay.
 

 “Article VIII. The owner agrees to provide all labor and materials essential to the conduct of this work not included in this contract in such manner as not to delay its progress, and in the event of failure so to do, thereby causing loss to the contractor, agrees that it will reimburse the contractor for such loss; and the contractor agrees that, if it shall delay the progress of the work so as to cause loss for which the owner shall become liable, then it shall reimburse the owner for such loss. Should the owner and contractor fail to agree as to the amount of loss comprehended in this article, the determination of the amount shall be referred to arbitration as provided in Article XII of this contract.”
 

 These two articles may be briefly analyzed as follows: Article VII provides for an extension of time to the contractor if his prosecution or completion of the work is delayed through any of the causes therein set forth; Article VIII provides for compensation in damages to both the owner and the contractor, under the conditions therein provided for.
 

 The crucial question is, Does this provision of Article VIII make the owner liable for default of
 
 other contractors
 
 furnishing labor and material essential to the conduct of this work?
 

 The question has been decided both ways, one favorable to the contractor and one favorable to the owner. In the latter class, the decision of the Court of Appeals, in
 
 Forschner Co.
 
 v.
 
 Third Reformed Church of Cleveland,
 
 is cited, which deci
 
 *566
 
 sion is based upon the ease of
 
 W. G. Cornell Co.
 
 v.
 
 Schuylkill County
 
 (C. C. A.), 222 F., 876.
 

 As opposed to these authorities, the contractor, and plaintiff, relies upon the case of
 
 Guerini Stone Co.
 
 v.
 
 Carlin Construction Co.,
 
 240 U. S., 264, 36 S. Ct., 300, 60 L. Ed., 636, and cases therein cited.
 

 We feel we must follow the Supreme Court of the United States in its construction of similar language in a case so nearly in point by way of its facts as to involve the same principle.
 

 In the case of
 
 Guerini Stone Co.
 
 v.
 
 Carlin Construction Co., supra,
 
 the defendant was a general contractor, hired by the United States government to erect a post office. The plaintiff was a subcontractor, employed by the defendant, under a contract very much like the one in the case at bar, to perform masonry work. The plaintiff sued the defendant on the contract, alleging, among other breaches, that the owner, the United States, had stopped the plaintiff’s work, and that the delays so caused had damaged the plaintiff. This suspension was claimed to be a breach of the defendant’s contract, expressed in paragraph 11 of that contract, which was identical with Article VIII in the contract in the case at bar. This right of the owner to suspend work was specifically made a ground for an extension of time in paragraph 7 of the Guerini contract, identical with Article VII in the contract in the case at bar; and the defendant contended that this extension of time was the plaintiff’s exclusive remedy. The Supreme Court said, beginning at page 279, 36 S. Ct., 306:
 

 “The trial court misapplied paragraph 7. The extension of time therein provided for was in
 
 *567
 
 tended as a dispensation, under given circumstances, of the liability to liquidated damages imposed upon the subcontractor by paragraph 6 for failure to complete his work within the time therein limited. The purpose of paragraph 7 is to relieve the subcontractor. It cannot properly be construed to deprive him of his right under paragraph 11 to reimbursement for losses attributable to delays
 
 assumed
 
 by the general contractor * *. *.
 

 “As we have shown, the failure to furnish a foundation upon which plaintiff’s work could be superimposed was a failure to provide ‘labor and materials not included in this contract,’ within the meaning of paragraph 11. To furnish the foundation, defendant assumed an obligation not conditioned by the question whether it was at fault or whether the delay was involuntary on its part because attributable to a stoppage of work by the owner in the exercise of a right conferred upon it by the principal contract. Defendant of course had notice of the government’s right to suspend the work, and could easily have safeguarded itself against responsibility to the subcontractor for delays attributable to the exercise of that right by an appropriate modification of paragraph 11 of the subcontract, for which presumably an allowance would have been made to the subcontractor in the form of an increased price for its work or otherwise. This not having been done, paragraph 11 must be enforced as it is written. It matters not whether plaintiff or its predecessor had notice of the' provision of the general contract respecting suspension of the work, since that provision was not incorporated into the subcontract. It must be
 
 *568
 
 presumed that delays attributable to action of the government were among those intended to be safeguarded by paragraph 11.”
 

 This case was before the Supreme Court of the United States for a second time (248 U S., 334, 39 S. Ct., 102, 63 L. Ed., 275), when the judgment of the Circuit Court of Appeals was reversed and that of the District Court affirmed, which latter court held that the plaintiff not only had a cause of action against the defendant, but also was excused from going on with its work. Attention is especially called to pages 340 and 341 of the opinion, which reiterate, in substance, the right of the plaintiff to recover under paragraph 11 of the contract in the
 
 Guerini case,
 
 which is similar to Article VIII in the case at bar, regardless of the existence of provisions similar to Articles VI and VII of the contract in the present case.
 

 See, also, the following authorities:
 
 Nelson
 
 v.
 
 Pickwick Associated Co.,
 
 30 Ill. App., 333; 1 Hudson on Building Contracts (4th Ed.), p. 323; 9 Corpus Juris, “Building and Construction Contracts,” Section 132, p. 791;
 
 See
 
 v.
 
 Partridge,
 
 9 N. Y. Super. Ct., 463; 9 Corpus Juris, “Building and Construction Contracts,” Section 125, p. 785;
 
 Smith
 
 v.
 
 Vail,
 
 53 App. Div., 628, 65 N. Y. S., 834, affirmed 166 N. Y., 611, 59 N. E., 1125;
 
 Stewart
 
 v.
 
 Keteltas,
 
 22 N. Y. Super. Ct., 261 (par. 2 of syl.);
 
 State
 
 v.
 
 Farish,
 
 23 Miss., 483;
 
 Bd. of Edn. of Roxbury Tp., Morris County,
 
 v.
 
 Kerr
 
 (1919), 93 N. J. Law, 240, 107 A., 259;
 
 Wood
 
 v.
 
 Ft. Wayne,
 
 119 U. S., 312, 7 S. Ct., 219, 30 L. Ed., 416;
 
 Erickson
 
 v.
 
 U. S.
 
 (C. C.), 107 F., 204.
 

 In
 
 American Concrete Steel Co.
 
 v.
 
 Hart
 
 (C. C.
 
 *569
 
 A.), 285, F., 322, at page 327, after quoting the paragraphs in the contract in that case which are similar to paragraphs VII and VIII of the contract in the case at bar, the court says:
 

 “It is claimed that these paragraphs are repugnant, for the reason that, since the contract provides for an extension of time in case of delay by the owner or the others mentioned in the contract, and contains a provision for damages to either party in case of delay caused by the other, the latter provision cannot be reconciled with the former and must fail * * *. Ordinarily a contract states a date or a period of time upon or within which it is to be completed; but no such precise limitation is found in this contract.
 

 “When a contract does fix a date or period of time, these two clauses are readily reconcilable. The first provision is designed to extend the time for the completion of the contract by the contractor in case of a delay caused by an owner, an architect, or others than himself mentioned in the contract. The second provision affords to each of the parties the right to be reimbursed for such damages as may be suffered by the delay of the other. That such provisions are not repugnant seems to be settled by
 
 Guerini Stone Co.
 
 v.
 
 Carlin,
 
 240 U. S., 264, 36 S. Ct., 300, 60 L. Ed., 636, and
 
 Del Genovese
 
 v.
 
 Third Ave. R. Co.,
 
 13 App. Div., 412, 43 N. Y. S., 8.”
 

 In view of the fact that we reach the conclusion that the case of
 
 Guerini Stone Co.
 
 v.
 
 Carlin Construction Co., supra,
 
 is controlling over the case of
 
 Cornell Co.
 
 v.
 
 Schuylkill County, supra,
 
 it follows that the case of
 
 Forschner Co.
 
 v.
 
 Third Reformed
 
 
 *570
 

 Church of Cleveland
 
 is not controlling, and therefore offers to prove Nos. 7 to 12, inclusive, were improperly rejected by the trial court, and the same should have been received.
 

 The next group of offers to prove, from No. 13 to No. 20, involves the question of the relation of the Osborn Engineering Company, the architect and engineer in charge of the construction. These proffers of proof go to the question of the delay caused by the inadequacy of the designs and the drawings and plans of the engineering company, and other inefficiencies on the part of the engineering company, all of which resulted, so the plaintiff claims, to his damage. This group of offers to prove we think should have been admitted, as we are of opinion that the engineering company was the agent of the defendant, even though under some circumstances it was to act as an arbiter between the owner and the builder. This, however, does not deprive the architect of his character as agent of the owner; and throughout the entire contract it is plain to be observed that the engineering company stands for and represents the owner. Was this phase of the case taken care of by Article VII, which provides for an extension of time for delay due to default of engineers? We think this applies to relief of the contractor for any liability because he could not complete the work within the time specified in Article VI, to-wit, November 1, 1919, and does not go to the question of damages sustained by plaintiff due to the default and neglect of the defendant’s alter
 
 ego,
 
 the engineering company.
 

 We concur in the view of the Court of Appeals
 
 *571
 
 that it was error to exclude this testimony.
 
 Mosler Safe Co.
 
 v.
 
 Maiden Lane Safe Deposit Co.,
 
 199 N. Y., 479, 93 N. E., 81, 37 L. R. A. (N. S.), 363;
 
 Boston Store
 
 v.
 
 Schleuter,
 
 88 Ark., 213, 223, 114 S. W., 242.
 

 Offer to prove No. 21 relates to the extra work orders, and the claim of the plaintiff is that these orders, thirty-four in number, issued by the architect, disrupted and delayed the orderly, economical, and efficient prosecution of the work called for by the plans and specifications. As expressed in counsel’s brief, the plaintiff claims:
 

 “Our contention in this respect is that, where the volume and character of the extra work orders is such that they render impossible the completion of the work called for by the original plans and specifications within the time fixed by the contract, and where they hinder, obstruct, and make more costly the doing of the original work, that they constitute in themselves a breach of the contract for which the owner is liable in damages entirely apart from his liability to compensate the contractor for such extra work.”
 

 An examination of the contract discloses full and ample provisions for these extra work orders, and we think the court of common pleas properly refused this offer of proof. The cases cited in the brief of defendant in error do not present contracts sufficiently similar to convince us to the contrary. Such a 'situation as assumed in offer to prove No. 21 is highly unusual, as most contractors welcome opportunity for extra work rather than make the issuance of extra work orders a basis for damages. In the case at bar, the conceded amount thereof is
 
 *572
 
 $87,921.56, nearly one-half of the original contract price for the whole job. While the amount received by the plaintiff has nothing to do with the competency of the evidence offered in No. 21, we think the plaintiff’s orders for extra work were within the terms of the contract, and that the position of plaintiff in reference to offer 21 is not tenable.
 

 Offer No. 22 goes to the orderly and economical sequence of the plaintiff’s work and of the damages to the plaintiff by reason of weather conditions, high labor, and material cost, under which plaintiff had to perform the work; but the same is drawn as covering matters referred to in plaintiff’s offers to prove from Nos. 1 to 21, inclusive, only a part of which offers to prove do we regard as proper, and therefore No. 22 was properly refused as drawn. We think the entire matter is taken care of in request No. 25, which the Court of Appeals held should have been received, in which view we concur.
 

 Request No. 23 goes to the manner and form in which the plaintiff prosecuted the work required of it by the contract, and we concur with the conclusion of the Court of Appeals that the same should have been received.
 

 No. 24 is a request very general, sweeping, and argumentative in character. We are unable to know how the court of common pleas would have been able to apply the same as an offer to prove. Damages, if recoverable at all, must be susceptible of reasonable, definite proof.
 

 As above indicated, offer to prove No. 25, relative to plaintiff’s claim for damages, should have
 
 *573
 
 been received. In this offer the contractor desired to prove that he would have been able to substantially complete the work which he agreed to perform under the contract between himself and the owner on or' before the date named in the contract, and that the reasonable cost of so doing would have been approximately $160,000; but that, owing to the hindrances, interferences, and delays caused by the owner, the engineer and certain other contractors employed by the owner, the reasonable value and cost of the work done by the contractor under said contract was greatly in excess of $160,-000, and that such contractor had been damaged by such delays and hindrances in the sum of $152,-416.83. We think this evidence was admissible, if proper evidence was offered to show the items going to make up the various amounts claimed, and the proof sufficiently definite in the premises.
 

 The twenty-sixth offer to prove related to the extra work ordered by the engineers. This amounted to $87,921.56. Plaintiff claimed in addition an allowance of 15.3 per cent-, of the labor and material cost of said extra work orders, as overhead. The engineers allowed $4,395.07, being 5 per cent, of the labor and material costs of said extra work orders. The parties thus not being able to agree, the matters were referred to arbitrators as provided in the contract. The award of the arbitrators was in favor of the plaintiff. The defendant refused to pay the same, according to the claim of the plaintiff; whereupon the plaintiff rescinded said submission ' to arbitrators and brought this action upon the original contract between the parties.
 

 
 *574
 
 The question then arises, What provision of the contract governs such a situation?
 

 The Court of Appeals says, in its opinion:
 

 “No. 26 was properly refused. The amount to which the plaintiff was entitled under the facts claimed by it was to be fixed by the engineer and evidenced by certificate. There was no pleading nor proof to avoid the engineer’s finding and without such avoidance the finding was conclusive.”
 

 We should be disposed to agree with the conclusion of the Court of Appeals if the only extra work provided for in the contract is that covered by Article IX, which fixes the price in addition to $179,900:
 

 “For all concrete machine foundations, in addition to that shown and specified,” etc. “For all reinforced concrete work in addition to that shown and specified,” etc. “For erecting steel columns, roof girders, and connections thereto in the second story of the main building extension.” “For erecting all stairs and railings with their appurtenances, ’ ’ etc.
 

 As to the foregoing provisions of Article IX, the contract plainly provides that “such sum” (apparently referring to the specifically mentioned matters) “shall be paid the contractor by the owner, in current funds, and only upon certificates of the engineers.” However, this view does not cover the requirements of Article III, which are:
 

 “No alterations shall be made in the work except upon written order of the engineers; the amount to be paid by the owner or allowed by the contractor in virtue of such alterations to be stated in said order. Should the owner and contractor
 
 *575
 
 not agree as to amount to be paid or allowed, the work shall go on under the order required above, and, in case of failure to agree, the determination of said amount shall be referred to arbitration, as provided for in Article XII of this contract.”
 

 As we read the record, the twenty-sixth offer to prove related to the averments in the petition where compensation was sought for the thirty-three extra work orders, “providing for alterations and additions to the work * *
 
 *
 
 and specifying as to all work for which unit prices were
 
 not
 
 provided by the terms of the contract.” Such'extra work orders we think came within the provisions of Article III, and no certificate of the engineers was a condition precedent to recover, although the amount to be allowed had to be stated by the engineer, and, in the event of disagreement of owner and contractor, arbitration under the terms of Article XII was the course to be pursued. This procedure the plaintiff claimed to have followed and offered to prove it, and in his general action for breach of contract sufficient appears to justify the admission of such evidence. We are therefore of opinion that offer to prove No. 26 was improperly denied by the trial court.
 

 There being four or more members of the court concurring in the various propositions decided, the judgment is entered as noted in the foregoing
 
 per curiam.