of the plaintiff, but might have been done with due regard to them, Schneider is not responsible for any violation of those rights, unless it has been proved that he personally directed it. There is a class of cases where the owner is equally responsible with the contractor for injuries done in the progress of the work, but those are cases where the contractor is employed to do an act which is illegal in itself, or which would be likely to infringe upon the rights of the plaintiff, however skillfully it was performed. Shear. & R. Neg. § 175; City of Joliet v. Harwood, 86 Ill. 110. But, upon the facts shown, this is not one of those cases. Upon the facts as they appear, no reason exists why an injunction should be granted against Schneider, because a preliminary injunction should only be issued when the particular defendant who is to be enjoined is proceeding to do some act which might injure the plaintiff during the pendency of the action. What may be made to appear upon the trial of the action with regard to Schneider's agency in this business is a different thing. All that it is necessary for us to say is that, upon the papers presented upon this motion, it is not shown that Schneider had any part in the violation of the plaintiff's rights by the blasting in that excavation; and, for that reason, the order, so far as he was concerned, was a proper one.

The order must therefore be affirmed as to the defendant Schneider, with $10 costs and disbursements to be paid by the plaintiff to him, and reversed as to the defendant Bradley, with $10 costs and disbursements to be paid by Bradley to the plaintiff, and, as to Bradley, the injunction granted, with $10 costs to abide event. All concur.

---

(13 App. Div. 412.)

GENOVESE et al. v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department. January 15, 1897.)

1. BUILDING CONTRACT — IMPLIED OBLIGATION OF OWNER — RESPONSIBILITY FOR ACTS OF ARCHITECT.
There is an implied agreement that an owner contracting to have excavations made for a building will give the contractor possession of the premises to enable him to do the work, and will do nothing to hinder or obstruct him in the performance of his contract; and the fact that the architect employed by the owner to superintend the building is to have direction of the work, and is by the contract made the arbitrator as to its proper performance, whose decision is binding on both parties, does not relieve the owner from responsibility to the contractor for the acts of the architect as general superintendent; and where he delays the contractor unreasonably in his work for the benefit of the owner or other contractors, and, by allowing other contractors to obstruct the work, renders it necessary for the contractor to do it in an unusual manner, which adds largely to its cost, the owner is liable to the contractor for the loss resulting.

2. SAME — CONSTRUCTION OF CONTRACT — RIGHTS OF CONTRACTOR.
A provision of a building contract by which the architect is given authority to adjust and make an allowance to the contractor for loss of time due to delays caused by other contractors does not preclude a recovery by the contractor against the owner for delays and obstructions caused by the acts of the architect as superintendent for the owner.

Appeal from judgment on report of referee.

Action by Virgilio Del Genovese and Henry B. Towle against the Third Avenue Railroad Company on contract and for damages. There was a judgment in favor of plaintiffs, and defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Henry L. Scheurman, for appellant.

L. Laflin Kellogg, for respondents.

INGRAHAM, J.    The complaint alleges two causes of action. The first cause of action was for the balance due under a certain contract for excavating the cellars and foundation for a building to be erected upon the property of the defendant, it being alleged that there was due and unpaid under the contract the sum of $10,-792.50.    The second cause of action was to recover damages sustained by the plaintiffs in consequence of the defendant having "hindered, delayed, embarrassed, and interfered with them [the plaintiffs], and with the work being carried on by them; prevented the plaintiffs from going on and finishing the same in a reasonable and proper manner; suspended the entire work under said contract from time to time; forced them to keep their working forces, teams, and machinery idle for a long period of time; filled or caused to be filled the area of excavation with timbers and braces, so that access to the said work with teams was prevented; forced the plaintiffs to take out the material excavated by derrick and buckets instead of by teams; caused the plaintiffs to lose the sale of the material excavated by inability to deliver at time agreed upon; forced the plaintiffs to handle and rehandle many times the excavated material before removing the same; increased the time and necessity of pumping beyond that called for in the contract; and in many other ways increased the expense of plaintiffs' work,"—whereby it is alleged that the plaintiffs sustained damages in the sum of $73,800. The referee found that there was unpaid and due to the plaintiffs on account of the contract price which the defendant agreed to pay for such excavation the sum of $7,500, and for extra work done by the plaintiffs in the sum of $485.    Upon the second cause of action the referee found that for various periods of time during the year 1892 the plaintiffs' work of excavation was entirely suspended, either by order of the architect or in consequence of the said premises being so occupied by other contractors acting under the architect's supervision and direction that the plaintiffs were unable to have access to the premises for the purposes of their contract; that the whole number of days that the plaintiffs were prevented from prosecuting their work was forty-seven; that the said interruptions to the plaintiffs' work were unreasonable, and the fault of the defendant, and in disregard and violation of the duty which the defendant owed to the plaintiffs to give them fair access to the said premises, in order that they might perform their contract, and not to hinder or obstruct them in their work.    The referee also found that in

consequence of the said premises being largely filled with obstructions, such as timbers and earthworks and interior walls placed there by defendant, or under the personal supervision and direction of the defendant's said architect, the plaintiffs, during a large part of 1892, were unable to carry on the work of excavating in the ordinary way, which greatly increased the costs to the plaintiffs of removing such material. The referee further finds that such interference with the plaintiffs was unreasonable, and the fault of the defendant, and in disregard and violation of its said duty to the plaintiffs; that the delay of the plaintiffs in performing their said contract within the stipulated time was caused by the interruptions and interferences and suspensions above referred to; that, except for such interruptions and interferences, the plaintiffs would have fully performed the said contract in about 100 days. The referee therefore orders judgment for the plaintiffs for $25,805.40, with interest and costs.

It is quite evident, I think, that the correctness of the referee's decision depends upon the question as to whether the finding that the interruptions to the plaintiffs' work were caused by the defendant, and were a violation of the duty under which, or implied contract whereby, the defendant was to furnish access to the said premises, in order that they should perform their contract, and not to hinder and obstruct them in their work, was sustained by the evidence. In considering this question it is quite important to consider how far the action of the architect, under the contract between the plaintiffs and the defendant, was as agent of the defendant, and how far the architect, in giving directions to the plaintiffs as to the manner of doing the work, and in directing and controlling the other contractors, in the performance of their contracts, to so unreasonably and unnecessarily obstruct the work of the plaintiffs as to materially increase the cost of performing their contract, can be said to be acting for the defendant. There can be no question but that under this contract there was an "implied understanding on all parties that they [the plaintiffs] were to be unrestricted in the employment of means to perform it [the contract], and that nothing which it was the duty of the owner to do to enable the contractors to perform should be left undone" (see Mansfield v. Railroad Co., 102 N. Y. 213, 6 N. E. 386); and the question is whether there has been a breach by the defendant of this implied understanding or contract. It is not claimed by the plaintiffs that the defendant in any way directed or interfered with the operation of the work, or with the performance by the plaintiffs of their contract, except so far as the directions given by the architect to the plaintiffs and to the other contractors. And we must look to the contract to determine just what relation this architect bore to the parties to the contract, and to the evidence to see just how far either party was responsible for an unreasonable or negligent performance of the duties imposed upon him. In the case of Mansfield v. Railroad Co., supra, attention is expressly called to the absence of any provision in the contract for the submission of the question there at issue to

the decision either of the owners or their engineer. In that case the court says:

"It was made the duty of the owner not only to prepare the foundations for the reception of the work of the contractors, but also to notify them [the contractors], through their agent, of the fact of such readiness. The terms of the contract plainly imply that the notice was to be of an actually existing condition, and not the expression of an opinion on the part of the engineer that the foundations were sufficiently advanced to enable the contractors to prosecute their work advantageously. The contractors have not submitted any such question to the decision either of the owners or their engineer, and, in view of the heavy obligations assumed by them, it would have been unwise and hazardous to have done so."

We have here to ascertain just what questions were left to the decision of the architect by the contract, and how far the architect, in determining the questions submitted to him, was acting as the chosen arbitrator between the parties independently of either party, but upon his own responsibility. By this contract both parties agree that the architect shall have a certain limited control over the work; that the contract itself shall be performed in a good workmanlike and substantial manner, to the satisfaction and under the direction of the said architect, to be testified by the writing of a certificate under the hand of the said architect; and his certificate is as binding upon the defendant as upon the plaintiffs. In determining whether or not the work has been so completed, he certainly would not be acting as agent or representative of the defendant any more than of the plaintiffs. As to both, he occupied under the terms of the contract the same position,—as a person to whom was referred the determination of the question as to the completion of the contract according to its terms,—and his determination upon that question was clearly to be binding upon both parties in the absence of fraud or palpable error or mistake. The plaintiffs were "also to dig down the banks along and away from the curb and stoop lines, including along adjoining courtyards, to such extent so as to allow for proper sheet piling and placing foundations the full depth of banks." Then appears the express provision by which the excavation "shall be arranged and attended to as directed by the architect, and to be finished so as to enable the mason to start walls and foundations not later than forty-five working days, beginning from date of original contract, dated on or about October 15, 1891"; and the plaintiffs were to prepare their work on the banks so as to enable the contractor for sheet piling properly to attend to his part of the work. Then comes the provision: "At all such points where both contractors are required to work, the number of excavations shall be attended to as is customary for such class of work, and as otherwise and finally directed by the architect." Then, as contemplating a clashing of contractors which would delay the plaintiffs in the performance of their contract beyond the time specified, provision is made for an extension of time to allow for such delay, and the architect is called upon to adjust and arrange for the proper allowance of such extra time. The fact, important to be considered, that it was contemplated by the contract that the plaintiffs were to carry on their contract contemporaneously with other contractors

at work upon the building, is clearly recognized by the contract. From the nature of the work to be done, moreover, it was apparent that before either of the other contractors could commence work the plaintiffs would have to make the necessary excavation. The contract clearly contemplates the possibility of a dispute between these various contractors during the progress of the work; and the plaintiffs' work is to be done not only to the satisfaction, but under the direction, of the architect. There is nothing in the contract itself to show that this architect was selected solely by the defendant. His own testimony, however, was to that effect. He testified:

"I am the Albert Wagner who drew these specifications in this contract we have talked about here. I am the architect in that contract. I had the superintendence and charge of the excavation at the Bowery, the Third Avenue Railroad power house, on the part of the Third Avenue Railroad people."

It thus appears that this architect had charge of this work on behalf of the company, and was paid by the company an architect's fee for his services; and to that extent he was in the employ of the defendant, and paid for the services which he rendered for it.

It is now too well settled in this state to be questioned that, where the parties have selected an arbitrator, who is to determine the questions that arise during the performance of the contract, and upon whose certificate the payments are to be made, and it is provided in the contract that the determination of such arbitrator is to be binding upon them, his determination is a condition precedent to the right of either party to recover under the contract, and that, in the absence of fraud or palpable mistake, his certificate is final.

In the case of McMahon v. Railroad Co., 20 N. Y. 466, where the provision was that "the work shall be executed under the direction and constant supervision of the engineer of the company, by whose measurements and calculations the quantities and amounts of the several kinds of work performed under this contract shall be determined, and who shall have full power to reject or condemn all work or materials which, in his opinion, do not fully conform to the spirit of this agreement, and shall decide every question which can or may arise between the parties relative to the execution thereof, and his decision shall be final and binding upon both parties," it was held that, although the engineer who makes the contract was the employé of the defendants, selected by and receiving compensation from them, his decision was not unlike that of an arbitrator; with this difference; that he is the selected and paid servant of one of the parties. But still his certificate, if legally made, is absolutely conclusive upon the rights of the contractor to recover, such contractor being dependent entirely upon the skill and integrity of the company's agent.

In Byron v. Low, 109 N. Y. 294, 16 N. E. 45, where the provision in the contract was that his (the chief engineer's) determination was final and binding upon both parties, the court said:

"Under this provision, the certificate of the engineer became a condition precedent to the plaintiff's right of action. The chosen arbitrator was to fix the amount of the final payment."

While this principle is well established, attention has constantly been called to the fact that, where such chosen arbitrator is in the employ of and is paid by one of the parties to the contract, his action under the contract is subject to the close scrutiny of the court to guard against his being influenced or controlled in favor of the party to whom he occupies such relation. Thus, in Sweet v. Morrison, 116 N. Y. 27, 22 N. E. 278, it is said:

"This case, therefore, is unlike those, so frequently arising, in which the certificate or estimate is required from an architect or engineer in the employment of one of the parties. In that class of cases the danger that the person acting as an arbitrator might favor his employers is obvious. While neither natural° nor legal disabilities hinder a person from being an arbitrator, provided the fact is known to the parties at the time of the submission, still, as he is the agent of both parties alike, and impartiality is the fundamental requisite, the courts closely scrutinize the action of an arbitrator whose relations to one of the parties was such as to naturally influence the judgment even of an honest man."

We thus have the rules which are to be applied in considering the responsibility of the parties for the acts of the architect.

By the third and fourth clauses of the contract, as before stated, any payment to the plaintiffs under the contract was conditioned upon the certificate of the architect as to the performance of the contract. By the ninth clause it is expressly provided that, in determining any dispute respecting the true meanings of the drawings or specifications, the decision of the architect shall be final and conclusive. The position that the architect held under these provisions undoubtedly would be that of the arbitrator selected by both parties; and it is quite clear, I think, that in the absence of bad faith or palpable mistake his decision would be binding, and neither party would be responsible to the other for any damages sustained in consequence of his neglect or fault in making a decision. When we come, however, to his act in directing how the work should be done, and in providing for the sand that should be retained, for the manner in which the excavation should be made, and for the manner in which the plaintiffs were to perform their work jointly with the other contractors, there is no provision as to his decision being binding upon the parties; nor does it appear that as to such directions he represented both parties. It is quite evident that he did not consider himself as representing the plaintiffs, for he testifies that he "had the superintendence and charge of the excavation at the Bowery, the Third Avenue Railroad power house, on the part of the Third avenue people"; and he was paid by the defendant. It thus appears that the contract itself draws a distinction between the decision of the architect, as arbitrator, in determining any dispute respecting the true meanings of the drawings and specifications, and the action of the architect in directing the method and conditions under which the work should be performed. That a person can, under a contract of the same character as the one in question, occupy two positions towards the parties,—one as an arbitrator to decide certain specific questions as they arise, and the other as representing, as to other questions arising between the parties, one of the parties to the contract,—seems to be settled by authority. In the case

of Mulholland v. Mayor, etc., 113 N. Y. 631, more fully reported in
20 N. E. 856, and reported in the supreme court in 9 N. Y. St.
Rep. 88, it appeared that the contract provided that the money payable under the contract was to become payable only upon the certificate of the engineer in charge of the work; and at the same time
the city was held responsible for the damages sustained in consequence of a mistake by the engineer in furnishing to the contractor
certain lines or levels which were erroneous, and which resulted in
requiring the contractor to do more work than that called for by
the contract. And in Mansfield v. Railroad Co., supra, the engineer
was, as to certain questions, the selected arbitrator of the parties,
but as to the notice to the contractors that the foundation was ready
he was acting as the agent of the defendant. Nothing in this contract indicated that the parties intended that this duty or implied
contract to give to plaintiffs such possession of the premises as
would enable them to perform this work was not to bind the defendant, or that the question as to the extent of this contract or of its
performance should be decided by the architect; nothing to show
that the plaintiffs were only to have such access to the property as
the architect allowed. Whatever may be said as to the binding effect upon the parties to this contract of a determination by the
architect as to any question which by the contract was to be determined by him, there is nothing in the contract that provides for
the submission to the architect of any question as to the performance by the defendant of this duty or undertaking to give to the
plaintiffs the possession necessary to enable them to complete the
contract. The plaintiffs were entitled to assume that the defendant
would comply with this implied obligation, and certainly no agreement to submit to the architect a question as to whether it had
or had not been violated can be implied from the contract before
us. While the excavation was to be arranged and attended to as
directed by the architect, and at such points where more than one
contractor were required to work together the points of excavation
were to be attended to as is customary for such class of work, and
as otherwise and finally directed by the architect, nothing gave to
the architect the power to determine as an arbitrator that the contractor in this contract must, for the benefit of other contractors,
or for the benefit of the defendant, do the work in an unusual and
improper way, largely increasing the expense of the performance
of the contract. It seems that during the performance of the contract by the plaintiffs there were two contractors for shoring, and
the contractor for doing the mason work in building the foundations
of the buildings, who did portions of their work at the same time
that the plaintiffs were performing their contract. The contract
between the defendant and the masons and the first shorer, named
Hughes, is not in evidence. Hughes continued to do the necessary
shoring until about the 1st of February, when he died. Some time
after that a contract was made between the defendant and Galligan,
who took Hughes' place as shorer. That contract was in evidence,
and its terms suggest a reason for the direction given by the archi-

tect that the plaintiffs were to work under the order of the shorer. Under that contract Galligan was to do the necessary shoring and sheet piling for the new building, agreeably to the drawings and specifications made by the architect, and to the satisfaction and under the direction of the architect. The work was to be done by days' work, and executed and attended to as directed by the architect. The contractor was to employ the workmen and foremen, and to provide all manner of materials, scaffolding, implements, and cartage of every description; and the company were to pay the contractor certain specific sums of money for each man employed, and for the use of the materials and implements necessary to perform the contract. In addition to that, it was to pay the contractors the sum of $10,000 for the superintendence and the responsibility assumed for the entire work. The plaintiffs were to be paid a gross sum, and it made no difference to the defendant how much additional expense they were put to. The defendant, however, had to pay the shorer for the men he employed and the material he furnished, and any delay in his work added largely to the amount that they had to pay. It was under these contracts clearly to the interest of the defendant that the shorer's contract should be performed with as little delay as possible, while the delay to the plaintiffs, or additional expense in the performance of their contract, imposed no additional obligation upon the defendant. From the testimony of the architect it appears that all of the delays and obstructions which caused the damage to the plaintiffs were directed by him; that he compelled the plaintiffs to work in subordination to the shorer and mason, interrupting the plaintiffs' work in an entirely unreasonable manner, and allowing both the shorer and the mason to so conduct the work under their contract as to most seriously interfere with the plaintiffs in the performance of their contract. The referee has found that such interruptions and interferences were unreasonable, were the fault of the architect, and were in disregard and violation of the duty which the defendant owed to the plaintiffs to give them fair access to the premises in order that they might perform their contract, and not to hinder or obstruct them in their work. Such finding, we think, was sustained by the evidence. Such interference and obstruction by the architect was in the face of constant protests, both verbal and in writing, to the architect, and to the officers of the defendant. It is not always easy to determine, where several contractors are working together in the erection of a building, where each contract is made with a knowledge of the existence of other contracts, and where there is an understanding that they must be carried on at the same time, just how far the owner's duty to the contractor to provide for him a reasonable opportunity for doing his work, and with proper access to the premises for that purpose, is modified by the existence of the other contracts, and the necessity of all being carried on together. It is clear, however, that where the owner, either by himself or by his employé, retains the control as to the manner in which the other contracts are to be performed, he is bound to use such

control in a way that will not render the performance of either contract unnecessarily burdensome or expensive upon either contractor. The duty of the owner to give to each contractor what is a reasonable access to the premises under the circumstances still exists. What is a reasonable access to the premises, or a reasonable opportunity to perform his work under the circumstances, will necessarily depend upon the particular facts of each case. But what the contractor is entitled to is such opportunity to perform his contract as, under all circumstances, considering the nature of the work, and what the other contractors have to do, is reasonable; and where the owner or his representative interferes in such a way as to prevent one contractor from having such reasonable use of the premises, or such reasonable opportunity to perform his contract, and damage follows therefrom, there is no reason why he should not be liable; and such a contract or duty will be more readily implied where, as here, the time of the performance of the contract is limited. That would seem to be the case presented here. The interference by the defendant, through its agent, the architect, who, according to his own testimony, had charge of the excavation on the part of the Third Avenue Railroad people, was, as found by the referee, unreasonable, and a disregard and violation of the duty which the defendant owed to the plaintiffs, and did hinder and obstruct them in their work. Such interruption and unreasonable regulation was a breach by the defendant of its implied contract with the plaintiffs, and for that the defendant was liable.

The claim is made that the defendant is not responsible for the delay caused by Hughes, the person who had the first contract to do the shoring, because it did not appear that Wagner, as the defendant's agent, had control of Hughes. We think the whole testimony of Wagner, however, shows that he did have control of the work under Hughes' contract. He testifies that he had charge of the excavation on behalf of the railroad, and had complete charge and superintendence of the work personally during the whole construction, and that he expressly instructed the plaintiffs that wherever Hughes wanted them to stop they were to stop. "I directed Del Genovese & Towle to stop and await the convenience of Mr. Hughes in fixing the braces. I did tell them to work with him." And he testified that when Galligan came on the work, he did the same thing with Galligan, and that he told the plaintiffs to stop whenever Galligan wanted them to stop. So in regard to the masons. His instructions to the plaintiffs constantly were to do whatever the masons directed them to do. His whole testimony shows that he had entire charge of the work, and did, as a fact, direct all the contractors in the performance of their contracts, and that he was responsible to the defendant for the manner in which the work was done. I cannot see, however, how it is material in determining a question as to a violation by the defendant of its duty or obligation to give to the plaintiffs their reasonable access to the premises, to enable them to perform their contract, whether Wagner had control over Hughes or not. It certainly would not be a performance

of the defendant's obligation to the plaintiffs to make a contract (the terms of which are not disclosed) with a third party, which resulted in ousting the plaintiffs from the possession of the premises necessary to enable them to complete their contract, and largely and unnecessarily increasing their expense. This duty or implied obligation which is upon the defendant is for the benefit of the plaintiffs, and upon no principle can that contract be performed or duty fulfilled by merely making a contract with a third party, the performance of which results in taking away from the plaintiffs the rights which they acquired under the implied contract with the defendant. The defendant was bound to give to the plaintiffs such possession and opportunity to perform their contract. They are certainly not excused from a performance of that obligation by making a contract with some one else which resulted in the plaintiffs being deprived of such possession. We think, therefore, that the referee was clearly right in his determination that the defendant was guilty of a breach of its contract with the plaintiffs, and was liable for the damages sustained by them.

As to the amount allowed for damages, it would appear that it was quite reasonable, and much less than the testimony would have justified.

We also agree with the referee that the provision of the contract allowing the architect to adjust and arrange a proper allowance for any loss of time by which the contractor should be delayed on account of other contractors is no defense to the claim of the plaintiffs to be paid the damages sustained by reason of the unreasonable or improper act of the defendant in violating its agreement with them. It does not appear that the architect acted under this provision of the contract; but, if he had, it is clear that the only object of the provision was to extend the time for the completion of the contract by the plaintiffs in case of such a delay caused by the other contractors in the proper performance of their work. Two cases are cited,—Haydnville Min. & Manuf'g Co. v. Art Institute, 39 Fed. 484, where, under a somewhat similar provision in a contract, the defendant's contention was adopted; and Nelson v. Associated Co., 30 Ill. App. 333, where the contrary view was taken. We agree with the referee that the latter case should be followed. We also agree with the referee as to his disposal of the defendant's counterclaim upon the ground stated by him, and do not think that it requires any further discussion.

The judgment should be affirmed, with costs. All concur.