The judgment should be reversed and a new trial granted.

All concurred.

Judgment of conviction reversed and a new trial granted.

---

M. L. RYDER BUILDING COMPANY, Respondent, v. THE CITY OF ALBANY, Appellant.

Third Department, May 7, 1919.

Building contract — action to recover damages based upon value of extra work and materials — implied agreement that owner or other person will not obstruct, hinder or delay contractor — damages recoverable by contractor because of obstruction of execution of work by owner.

Where in an action to recover damages based upon the value of extra work and materials rendered necessary to be furnished for the completion of a building contract, by reason of the acts, directions and omissions of the defendant and its agents, it appears that no estimate for extra work was submitted by the plaintiff or approved by the defendant as

required by the building contract, and that no officer with power to bind the defendant contracted with the plaintiff for such extra work, there is a failure to establish a cause of action upon an agreement to pay for said work.

In every express contract for the erection of a building or for the performance of other constructive work, there is an implied term that the owner or other person for whom the work is contracted to be done will not obstruct, hinder or delay the contractor, but on the contrary will in all ways facilitate the performance of the work to be done by him.

The acts and directions of an architect or engineer relating to the details of construction over which they have charge are the acts of their principal, and when by their acts or directions a contractor is so obstructed in his work that extra materials and labor are required to be furnished by him in order that he may fulfill his contract, there is a breach of contract on the part of. the owner, damages for which are measurable by the value of the additional work and materials furnished.

A contractor with a city for the construction of a building *held* entitled to recover for extra expense incurred in rebuilding concrete forms torn down by an electrical contractor, and for the value of extra work necessitated by defective plans furnished by the defendant, and for additional expense incurred because of the installation of pipes by a plumber under contract with the defendant, so that they interfered with the building of a partition, and also for the expense of enlarging window openings; but not entitled to recover for the expense of filling and grading outside the walls of a building, which was to be erected upon a side hill or for furring between the tops of the windows and the lower sides of relieving arches, or for digging test pits at the request of the architects to determine the depth at which the foundation should be placed.

APPEAL by the defendant, The City of Albany, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 18th day of October, 1918, upon the verdict of a jury, and also from an order entered in said clerk's office on or about the same day denying defendant's motion for a new trial made upon the minutes.

*Arthur L. Andrews* [*John J. McManus* of counsel], for the appellant.

*Visscher, Whalen & Austin* [*J. Harris Loucks* of counsel], for the respondent.

H. T. KELLOGG, J.:

The plaintiff entered into a written contract with the defendant for the erection of a one and a half story building

with basement, to be used as a fire alarm signal station. The plaintiff performed its contract and received the contract price. It then brought this action to recover damages, based upon the value of extra work and materials rendered necessary to be furnished for the completion of the contract, by reason of the acts, directions and omissions of the defendant and its agents. The claim consists of seven items totaling $957.16, for which sum the plaintiff has had judgment upon the verdict of a jury.

The contract contained the provision: " No work shall be considered as extra unless, before said work shall have been done, a separate estimate for the same in writing shall have been submitted by the said party of the second part to the said architect and the same approved by said party of the first part." No such estimate for extra work was submitted by the plaintiff or approved by the defendant. The contract also provided for alterations, deviations, additions and omissions in the contract work, to be made by the defendant through its board of contract and supply. That board gave no directions, made no requests, and uttered no promise relating to the work involved herein. No officer with power to bind the defendant having contracted with the plaintiff, no cause of action upon an agreement to pay for extra work arises in its favor. Consequently if there be any cause of action it must be grounded upon the expressed or implied terms of the original contract.

In every express contract for the erection of a building or for the performance of other constructive work, there is an implied term that the owner or other person for whom the work is contracted to be done, will not obstruct, hinder or delay the contractor, but on the contrary will in all ways facilitate the performance of the work to be done by him. This is the principle which underlies the cases of *Messenger* v. *City of Buffalo* (21 N. Y. 196); *Mansfield* v. *N. Y. C. & H. R. R. R. Co.* (102 id. 205); *Mulholland* v. *Mayor* (113 id. 631); *Horgan* v. *Mayor* (160 id. 516); *Gearty* v. *Mayor, etc.* (171 id. 61); *Del Genovese* v. *Third Ave. R. R. Co.* (13 App. Div. 412).

In the *Mansfield* case the court said that the contract implied " an understanding by all parties that they were to be unrestricted in the employment of means to perform it, and

that nothing which it was the duty of the owner to do to enable the contractor to perform, should be left undone." In the *Horgan* case it was said: "It has been frequently held that if a municipal corporation, by its own act, causes the work to be done by a contractor to be more expensive than it otherwise would have been according to the terms of the original contract, it is liable to him for the increased cost or extra work."

The case of *Gearty* v. *Mayor, etc.* (*supra*), though it has led to some confusion, is, nevertheless, a leading authority which enunciates a principle having application in the present case. There a paving contractor, who had laid a substantial portion of the pavement contracted for, was required by a city engineer to take up and replace the part so laid, and a recovery measured by the value of the extra work thereby occasioned was upheld. Referring to the failure of the plaintiff to procure a certificate from the engineer having charge of the construction, the court said: "If this were an action for extra work under the contract, such a certificate would be necessary, but as already pointed out, this is an action to recover damages for a breach of the contract, and the provision requiring a certificate has no application." The court did not state in what respect the contract had been broken by the defendant, nor was there any express promise contained in the contract in relation to which the facts proven established a breach. The court, undoubtedly, meant that the defendant had impliedly contracted in no wise to obstruct the plaintiff in its work, that it had broken its promise when through compulsion exercised by its engineer, the plaintiff was compelled to do over work already properly done, and that the measure of damages occasioned by the breach was the value of the extra work required to be performed.

In *Del Genovese* v. *Third Ave. R. R. Co.* (*supra*) the plaintiff, who had contracted to make excavations for cellars and foundations, was delayed in his work by orders of the architect in charge requiring him to suspend work to await the performance of work by other contractors, and a recovery of damages for the delay occasioned was upheld. This case, as well as the *Gearty* case, are authorities for the proposition that the acts and directions of an architect or engineer relating

Third Department, May, 1919.         [Vol. 187.

to the details of construction over which they have charge, are the acts of their principal, and that when by their acts or directions a contractor is so obstructed in his work that extra materials and labor are required to be furnished by him, in order that he may fulfill his contract, there is a breach of contract on the part of the owner, damages for which are measurable by the value of the additional work and materials furnished.

In respect to at least three items forming a part of the claim of the plaintiff, the defendant itself obstructed the execution of the work, thereby broke its contract and because of such breaches, under the authorities cited, became liable for damages, measured by the extra expense incurred.

First item.    After the plaintiff had finished the foundations it erected metal forms for the purpose of pouring concrete for the first story walls.    An electrical contractor came upon the job, tore down the forms, and put in wires and pipes.    It does not appear that the plaintiff had any reason to know that this contractor was to place wires and pipes in the wall, or that it failed to accommodate itself properly to such work. The plaintiff admittedly rebuilt its forms at a cost of forty dollars and twenty-eight cents.    Here was a clear case where the defendant injured the plaintiff by authorizing other contract work to be done, thereby broke an implied term of its contract, and became liable for damages in the amount claimed.

Second item.    The plans and specifications called for single vent flues at each end of the building to be carried from the basement to the roof, passing through the center of the gables. The plans also showed windows in each gable directly in the course of the flues, so that the flues had to be changed or the windows omitted.    The architects required the plaintiff to divide the flues to pass by the windows on either side, at an expense to the plaintiff of seventy-two dollars and thirty-five cents.    Thus a defective set of plans, furnished by the defendant, obstructed the plaintiff in such a manner as to require extra work in the performance of its contract.    Therefore, the defendant was liable for a sum equal to the value of the extra work.

Third item.    A plumber under contract with the defendant installed certain pipes in the building in such places that

they interfered with the building of a partition which the plaintiff had undertaken to erect, with the result that the plaintiff incurred additional expense in the sum of three dollars and ninety cents. A recovery was properly had for this sum, for the same reasons given in justification of a recovery under the first item.

Extra work and materials were rendered necessary to be furnished by the plaintiff because of errors committed, directions given, and compulsion exercised by the architects of the defendant, in reference to one item of the claim of the plaintiff.

Fourth item. The plaintiff completed the walls of the building leaving window openings for windows of the size specified in the plans. The architects then gave to the subcontractor of the plaintiff detail plans for larger windows than specified. Windows of the larger size were manufactured and brought to the work. Thereupon the plaintiff was compelled to enlarge the window openings at an admitted cost of $231.56. In respect to this item the case is very similar to that of *Gearty* v. *Mayor, etc. (supra)*, where pavement was torn up and relaid at the instance of a city engineer. The plaintiff in this instance was unreasonably interfered with by the defendant acting through its agents, the architects, and was entitled to a recovery of the sum named.

In respect to the three other items of its claim the plaintiff was not entitled to a recovery.

Fifth item. This claim is for $589 for filling within the walls of the building, and for grading outside the walls. The building was to be erected upon a side hill. The existing grades were given on the plans. They showed the elevation at the front of the building to be at one end 193.50 feet, and at the other end 193.55 feet over sea level. They showed the elevation of the building in the rear to be 185.10 feet at one end, 185.90 feet at the other, and at the center 188.70 feet. There was, therefore, a fall of ground under the site of the building of from 4.85 feet to 8.45 feet. The plaintiff agreed to lay a horizontal basement floor at a level of 192.84 feet, to consist of four inches of concrete on a three-inch bed of cinders or sand. The elevation of the floor, therefore, at some points was specified to be 7.74 feet above the surface of the ground.

It was not specifically provided in the contract that the plaintiff should fill and grade within the walls to meet the level of the floor. However, this would seem to be a necessary inference. A contractor who agrees to lay a cement floor on a side hill must impliedly agree to make the necessary fill to support it, otherwise he has agreed to do the impossible. The fill necessitated by the contract, therefore, furnished no basis for a claim for extra work.

The basement floor was, in fact, laid on a bed fifteen inches higher than the plans required, and additional filling and grading of fifteen inches, both within and without the building, were, therefore, made. As related by the president of the plaintiff this came about as a result of a conversation had by him with one of the architects. He asked the architect what grade he needed for the building from the curb back to the water table line, and the architect replied " half inch to a foot." The front of the building was set 50. feet from the curb, so that this made an elevation of twenty-five inches above the curb. Now, the plans themselves distinctly showed that the finished grade at the front of the building was to be 200 feet above sea level, which was fifteen inches less than the grade so given by the architect. We have a case, therefore, where the contractor and the architects attempted to make a contract altering and modifying the contract between the parties in a material respect. In *Mulholland* v. *Mayor* (*supra*) an engineer gave to a paving contractor an erroneous street grade, in consequence of which the contractor had to tear up his work and relay the pavement. The court there said: " It was not occasioned by any intentional change of grade from that indicated upon the plan and profile of the work and, therefore, was not within the terms of the agreement, which permits a change without additional compensation." The case before us is the converse of the *Mulholland* case. There was here no direction or order given by the architect in the course of the progress of the work which obstructed or delayed the work, and laid the plaintiff under compulsion to furnish additional labor and materials in order to complete its contract. On the contrary, at the suggestion of the plaintiff itself a new bargain was attempted to be entered into between the plaintiff and the architects by which

intentionally and voluntarily the old contract would be altered in a material particular and a structure caused to be erected on an elevation wholly different from that agreed upon. Indeed, the building erected, as a result of this agreement, now stands upon an elevation fifteen inches higher than the contract called for. The claim presented for extra filling and grading is, therefore, purely and simply a claim for extra work and materials furnished under an attempted alteration of the contract which the persons agreeing to the change had no right to make. The recovery upon this item of the plaintiff's claim cannot be supported..

Sixth item. The plans called for square windows which in some instances were to be surmounted with relieving arches. The plaintiff makes a claim of eleven dollars and thirteen cents for furring between the tops of the windows and the lower sides of the arches. It certainly was to be implied from the contract that there should be no openings above the windows, and that the spaces in question should be furred. The plaintiff was not entitled to a recovery for extra work upon this claim.

Seventh item. Plaintiff makes claim of nine dollars for digging test pits to determine the depth at which the foundations should be placed. It was no part of the duty of the plaintiff under the contract to make these tests. If it made them at the request of the architects no claim can be based upon such request, for the architects were without power to contract with the plaintiff.

The verdict of the jury was in exact accord with the total sum claimed by the plaintiff as shown in its complaint and proven by it upon the trial. The jury must, therefore, have arrived at its verdict by awarding to the plaintiff the maximum sum claimed and proven upon each of the seven items which have been considered. As there was substantially no dispute in the proof in relation to the three items of the claim which we consider cannot form the basis of recovery, and as it does not appear that upon another trial any issue of fact in relation to these items can develop, the judgment should be modified by deducting therefrom the total sum claimed under such three items.

The judgment should be modified by reducing the amount

recovered to $348.03, and eliminating costs, and as thus modified affirmed.

Judgment modified by reducing the damages recovered to $348.03, and by striking out the provision for the recovery of costs, and as so modified judgment and order unanimously affirmed, without costs.