GAROFANO CONSTRUCTION CO., INC., Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 25092.)

Court of Claims, December 29, 1944.

*John Gilleran* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Mortimer H. Michaels* of counsel), for defendant.

Dye, J. This claim is for damages for breach of a contract entered into by the State with the claimant for the construction of a section of the Interborough Parkway in Queens County, New York.

The claimant was directed to start work on the contract October 8, 1934, and by the terms of the contract, which contained a penalty clause, the work was to be completed on February 1, 1935. In general the contract called for the paving of a section of the Interborough Parkway and a portion of the Grand Central Parkway with certain access roads and the installation of drainage and sprinkler facilities at certain places designated on the plans.

The contract contained the usual clauses about suspension of paving during cold weather, and this, taken with the short completion date, indicated that paving would have to be laid promptly after the notice to commence work on October 8, 1934. The claimant moved onto the job promptly after notice to commence, and had available sufficient machinery and labor, and there is every reason to believe that had the contract site been made available to it, without interference from the State and its other independent contractors, the claimant could have, and probably would have, completed his contract within the time set for completion.

The plans and contract documents indicated a sequence of operations which would allow the immediate start of paving at the westerly end of the site and the progression thereof easterly as rapidly as the drainage facilities within the paving area could be placed, which sequence the claimant intended to follow.

The site of the work divided itself into three natural areas, viz., the Metropolitan Bridge area, the Austin Street Bridge area, and the Queens Boulevard Bridge area, in each of which areas the general construction work was being done by independent prime contractors, each of whom had exceeded its specified completion date and was occupying the site on October 8, 1934, and each of whom thereafter, with the approval of the State, failed to progress its work so as to permit the contractor to meet its specified completion date.

In addition to the general contractors, the State also failed to do necessary preliminary engineering work, which neglect interfered with the claimant's progress. Also, work was being done by the Department of Water Supply of the City of New York which prevented paving operations.

In the spring of 1935, the work was again delayed through no fault of the claimant, and it was not until May 2, 1935, that it was able to proceed with its work. This was completed on July 1, 1935; the State granted an extension of time of completion and waived the penalties mentioned in the contract, but did deduct from the final payment, under protest, the sum of $2,323.48 as a penalty for engineering charges.

This claim was originally filed in the sum of $103,744.15, all of which was voluntarily withdrawn by the claimant, except items of damages suffered by the claimant due to the breach of contract by the State and the unwarranted deduction from the final estimate for engineering charges. These damages consist of the rental value of certain items of equipment necessary for the work, and which were retained at the site during the shutdown period.

The State, while not seriously disputing the facts of delay and interference on its part, takes the position that this was anticipated at the time the contract was entered into and that the claimant has no grounds for complaint. In support of this contention, it refers to the contract provisions in " general notes " at page 1:

" The contractor will not have exclusive occupancy of the territory within or adjacent to the limits of this contract, as other contracts in connection with this project are now in force or will be awarded as Plans are completed.

"In case of interference between the operations of different contractors, the Engineer will be the sole judge of the right of each contractor and of the sequence of work necessary to expedite the completion of the entire project, and in all cases, his decision shall be accepted as final. All expense incurred by the Contractor due to complying with the provisions of this article shall be included in the price bid for the various contract items."

The State further contends that the contractor had viewed the site and knew that other contractors were at work.

We are not impressed with this argument. The State also knew the condition of the work, and also knew that other general contractors were working on the site away beyond their specified completion date, all of which was with the approval of the State Engineer, and that the Engineering Department had not completed necessary and essential preliminary engineering work when, on October 8, 1934, it served notice on the claimant to commence work, under a contract which contained penalty clauses and which made time of the essence.

The contractor certainly was entitled to expect that the State would furnish a site and not interfere with the progress of the work, but afford it a reasonable opportunity to perform its contract according to its terms. This was not done, and to give effect to the strict language of the "general notes" referred to would be to place the stamp of approval on arbitrary and unreasonable interference on the part of the State.

It is well established that the State is liable in damages for its failure to deliver a contract site and provide a contractor with reasonable opportunity to perform his contract without interference (*Town and Country Engineering Corp.* v. *State*, 46 N. Y. S. 2d 792, and the many cases therein cited) and that a contractor may recover for the fair and reasonable rental value of machinery held on the site during the period of delay. (See *Immick Co.* v. *State of New York*, 251 App. Div. 919.)

Circumstances attending the delay period determine whether the damages shall be measured on a daily or monthly rental basis. Here the claimant proved the fair and reasonable rental of each machine on a daily basis, which rate was not disputed. The State, however, took the position that because the work had been delayed 103 days, daily rental as a measure was unreasonable and produced an excessive result. It contended that the measure of damage should be the reasonable rental value computed on a monthly basis, and was allowed to show the monthly rental rate for similar machines.

It seems to this court, however, that this contention must be disallowed. When the contractor brought its machines to the site, it expected to complete the work according to the contract, and it could not know that the completion date was to be postponed for a period of 103 days. It did know, however, that the paving work could have been done in approximately 30 days, and was actually done in 35 working days.

Under these circumstances, we feel that the damage should be measured by the daily rental rate, and for this there is ample precedent. (*Town and Country Engineering Corp.* v. *State, supra; Immick Co.* v. *State of New York, supra; Turner Construction Co.* v. *State of New York*, 253 App. Div. 784, mod. 279 N. Y. 243; *Smith & Sons Constr. Co.* v. *State of New York*, 266 App. Div. 886, affd. 292 N. Y. 691.)

There was no justification in deducting for engineering charges during the period of delay.

An award has been made in the accompanying decision covering both the damages for breach of contract and the unauthorized deduction for engineering charges.

Let judgment be entered accordingly.

BARRETT, P. J., concurs.