SHORE BRIDGE CORPORATION, Claimant, *v.* STATE OF NEW YORK, Defendant.   (Claim No. 27112.)

Court of Claims, March 20, 1946.

*William F. Conway* for claimant.

*Nathaniel L. Goldstein, Attorney-General (James G. Austin,* of counsel), for defendant.

LAMBIASE, J. On or about the 19th day of October, 1938, claimant and the defendant, State of New York, duly entered into a written contract whereby claimant agreed to furnish all the materials, appliances, tools and labor of every kind required for the reconstruction of the Hornell-Big Creek Bridge No. 1-A and North Approaches, constituting reconstruction contract **No. 3998,** and for the construction of the Hornell City, Seneca Street-South Approach to the Bridge, constituting contract No. C-38-9, in the county of Steuben, New York, work under the contract to be completed in the most substantial and workmanlike manner.

Work under the contract was commenced by the claimant on or about October 30, 1938, and, pursuant to its terms, was to be completed and wholly performed on or before September 1, 1939. Claimant completed its contract on or about August 26, 1939, and all work thereunder was accepted by the defendant. A receipt for payment under the final estimate was signed by claimant on or about January 19, 1940. This receipt contained a provision to the effect that it was signed without prejudice to claimant's right to have recourse to the Court of Claims for damages alleged to have been sustained by it during the course of its performance of the work under said contract.

Thereafter and on or about June 14, 1940, claimant filed a notice of intention to file a claim herein, and on or about February 21, 1942, it filed a claim for $24,048.18 with interest thereon from February 24, 1940. This claim alleges various breaches of contract on the part of the State of New York, and recovery is sought therein in the amount above stated, as and for increased costs to the claimant in the performance of its work, and damages sustained by claimant occasioned by reason of the afore-mentioned breaches of contract.

Upon the trial of this claim, the claimant, by its proof, reduced its demand for damages to the sum of $4,100, which sum is composed of two items: The first, in the amount of $2,000, for damages alleged to have been sustained by claimant by reason of the fact that claimant's plant, machinery and equipment, which had been brought to the contract site for the purpose of performing the work under the contract, were compelled to remain idle on the job for a period of one month due to the unnecessary and unreasonable delays caused by the State; and

the second, in the amount of $2,100, for extra work performed by claimant under protest and at the direction of the defendant's engineer in charge of the job.

The State rested its case at the close of claimant's case; the length and the alleged cause or causes of the delays involved in claimant's first item of damage, and the amount and value of the alleged extra work constituting the basis of claimant's second item of damage are not contested by the State. In fact, it is conceded that the length of time that claimant was delayed in the performance of its work under the contract herein is one month; and that the claimant's plant, machinery and equipment were held idle at the site and could not be put to gainful use by claimant for said period of time. It is also admitted by the defendant that the fair rental value of said plant, machinery and equipment for said period of one month that it was held idle is $2,000 (State's proposed Findings of Fact Nos. 5, 6 and 7). The defendant also admits that the fair and reasonable value of the extra work item is the sum of $2,100; but in this connection, it argues and submits that said amount covers all extra work and increased costs to claimant by reason of errors, changes and requirements of every name and nature (State's proposed Findings of Fact No. 2, in part).

At the conclusion of claimant's case, the State moved for the dismissal of all of that part of claimant's claim which, for the purpose of convenience, we have designated herein as the first item thereof. It also moved at various times during the trial and at the end of claimant's case to strike out all the testimony of the claimant and its witnesses with reference to said item upon the ground that the claim attempted to be proved thereby was not actionable. Decision was reserved by the court on said motions, and they are disposed of hereinafter.

It seems to us, therefore, that the question for us to determine herein with reference to the first item of claimant's claim may be briefly stated as follows: Is claimant precluded from recovering its damages sustained by reason of the enforced idleness of its plant, machinery and equipment occasioned by delays caused by the State, notwithstanding the fact that claimant completed its contract within the time specified under the contract, the period of such enforced idleness of such plant, machinery and equipment being wholly within the contract period? Under the circumstances of this case, the question is one of law, and we shall now consider it.

It is the contention of the claimant that although the contract was completed within the time specified therein, it was,

nevertheless, because of the delay caused through the State's fault, prevented from completing its contract according to its work progress schedule, which would have seen the work completed and performed one month before the date of actual completion and termination of the work. It contends that thereby the State breached its contract.

On the other hand, the State argues that, since the claimant completed its work under the contract within the time set forth therein, the claimant cannot and does not have a cause of action for damages for the enforced idleness of its plant, machinery and equipment because of the delay hereinbefore mentioned. The State concludes that there has been no breach of contract under the circumstances, and it submits further that all extra work and increased costs to the claimant by reason of errors, changes and requirements of every name and nature have either been paid in full or are already included in the item of $2,100 which claimant is seeking for extra work herein. And it contends that any acts or circumstances which resulted in consuming the entire period of the contract for its performance are not unreasonable and are clearly contemplated by the contract, and that no recovery can be had by reason thereof.

Although the State concedes that the total length of time that the claimant was delayed by the State in the performance of its work is the period of one month, we deem it necessary to refer to, and to discuss briefly, the salient evidence relating to said delay or delays as it bears upon the question of whether or not the State did commit a breach of contract herein.

Some of the acts complained of by the claimant are as follows: (a) It appears that soon after the commencement of the work, the State's engineer set out the temporary line for the location of the temporary bridge; and this line, as thus established, was, through his error, laid out too close to the old bridge structure, thereby necessitating a relocation of the line. A new site, therefore, had to be cleared for the new location despite the fact that one had already been prepared where previously designated by the State. Errors were also made by the engineer for the State in laying out the pile bents on both the north and south sides of the site of the temporary bridge.

(b) The plans prepared and furnished by the State had indicated at certain points thereon, the location of water lines. Upon excavation being made at the indicated points, it was discovered that the indicated location was erroneous. It was testified, too, by the claimant that the exact location of these water lines was ascertained only after further excavation was

made by the claimant. It was absolutely essential that these water lines be located before work on the bridge structure could be finished, as these water lines had to be carried on the bridge structure across the intervening water which the bridge spanned; and the service furnished by said water lines could not be interrupted at any time.

(c) Claimant contends that work on the excavation for the north abutment of the bridge was stopped by the State's engineer because he said he was going to redesign one of the wing walls thereof. Claimant was then informed by the said engineer that it was necessary for him (the engineer) to submit the new design for approval to the State's office in Albany. Because of this fact, claimant was unable to proceed according to its work schedule under which it was going to carry on two operations at one time, that is, the demolition of the old bridge and the construction of the footings and abutment on the north side of the bridge. Therefore, work was stopped on the north abutment, and demolition of the old bridge was commenced and carried on as a sole operation. Claimant's evidence was that claimant was delayed for a period of ten days to two weeks while a decision was made by the State with reference to the new design of the abutment of the bridge as prepared by the State's engineer on the job. At the expiration of this period of time, claimant was notified by the State's engineer on the job that his new design had not been approved; and he then told claimant to go ahead and build the abutment according to the original plans.

(d) There were various delays caused by changes in the plans with reference to the installation of pipes. These delays were caused by reason of the fact that upon said changes being made, approval from Albany on the part of the State had to be obtained before the changes could be put into effect.

(e) There was delay in the work of excavating the road constituting the south approach to the bridge when the soil at a depth of eighteen inches below the existing road surface was found to be of an unsuitable nature as a base for the proposed road. Claimant was compelled to shut down its plant for a week, the time that it took the State to decide to further excavate so that the objectionable soil could be removed.

(f) There was also delay occasioned because of the alleged unnecessary and unreasonable testing of piles and because of the unreasonable demands of the State with reference to the driving of piles by the claimant.

(g) Delays also occurred because of the alleged unreasonable rejection of piles and of other materials and in the matter of obtaining the approval of pipe designs. There were other delays testified to by claimant's witnesses which we do not deem necessary to discuss in detail. All of these delays, it was testified on behalf of claimant, slowed up and delayed claimant's work under this contract, and in greater part tied up claimant's plant.

The meaning of the instant contract, as of all contracts, is to be gathered from a consideration of all its provisions, and of the inferences naturally derived therefrom as to the intent and the object of the parties in making it, and the result which they intended to accomplish by its performance. It is quite obvious that the provisions of the instant contract in respect to time are of its essence, and were regarded by the parties as of primary importance, the claimant being deterred from dilatoriness or delay in the prosecution of its work by the certainty of pecuniary loss.

The contract (par. 9) provides among other things that: " No extension beyond the date of completion fixed by the terms of this contract shall be effective unless in writing signed by the State Department of Public Works, Division of Highways. Such extension shall be for such time and upon such terms and conditions as shall be fixed by the Division of Highways, which may include a charge for engineering and inspection expenses actually incurred upon the work ".

There are other contract provisions governing the matter of the obtaining of extensions of time to complete, which provisions it is not deemed necessary to discuss herein, but mention is made of their existence to indicate that time was indeed of the essence of the instant agreement.

Under the circumstances, claimant herein was entitled to employ all of the agencies and forces which in its judgment could wisely and advantageously be used in the performance of its work under its contract. A construction which would enable the defendant to retard the prosecution of the work by claimant, or disable it from employing all of the agencies or forces which in its judgment could wisely and advantageously be used in the performance of the contract herein, would operate as a fraud upon the claimant and render its covenant to complete the work on or before September 1, 1939, a reckless and foolhardy undertaking. The very assumption of such a covenant as to performance on the part of the claimant implies an understanding by all parties that claimant was to be unrestricted

in the employment of means to perform it, and that nothing which it was the duty of the defendant, the State of New York, to do to enable the claimant to perform, should be left undone. The claimant was to be enabled to prosecute its work to the utmost advantage and economy.

It is unreasonable to suppose that the parties intended to enter into obligations providing for the performance of the work by the claimant under a penalty for nonperformance within a given period which yet left it optional for the State to facilitate or retard such work at its pleasure or discretion. Any other construction would destroy the mutuality of the agreement, and put it practically in the power of one party to defeat the performance by the other. (*Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 102 N. Y. 205, 213.)

It is the duty of one party, for whom another is doing work under a contract, to do his or its part to facilitate the work. (*Wilson & English Constr. Co.* v. *N. Y. C. R. R. Co.*, 240 App. Div. 479; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, *supra*.)

In the case of every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part. (*Patterson* v. *Meyerhofer*, 204 N. Y. 96, 100; *Cameron-Hawn Realty Co.* v. *City of Albany*, 207 N. Y. 377, 382.)

It is well settled that where the owner interferes with the contractor's work, and such active interference causes damage to the contractor, the contractor may recover the same from the owner. (*Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, *supra*; *Gearty* v. *Mayor, etc., of New York*, 171 N. Y. 61; *Borough Const. Co.* v. *City of New York*, 200 N. Y. 149; *Waples Co.* v. *State of New York*, 178 App. Div. 357; *Johnson* v. *City of New York*, 191 App. Div. 205, affd. 231 N. Y. 564; *Uvalde Asphalt Paving Co.* v. *City of New York*, 196 App. Div. 740; *Ryder Building Co.* v. *City of Albany*, 187 App. Div. 868; *American Bridge Co.* v. *State of New York*, 245 App. Div. 535.)

In *Ryder Building Co.* v. *City of Albany* (187 App. Div. 868, 870) the court said: " In every express contract for the erection of a building or for the performance of other construction work, there is an implied term that the owner, or other person for whom the work is contracted to be done, will not obstruct, hinder or delay the contractor, but on the contrary will in all ways facilitate the performance of the work to be done by him. This is the principle which underlies the cases of *Messenger* v. *City of Buffalo* (21 N. Y. 196); *Mansfield*

v. *N. Y. C. R. R. R. Co.* (102 id. 205); *Mulholland* v. *Mayor* (113 id. 631); *Horgan* v. *Mayor* (160 id. 516); *Gearty* v. *Mayor, etc.* (171 id. 61); *Del Genovese* v. *Third Ave. R. R. Co.* (13 App. Div. 412).'' (The *Del Genovese* case, *supra,* was affirmed 162 N. Y. 614.)

It has been frequently held that if a municipality, by its own act, causes the work to be done by a contractor to be more expensive than it would otherwise have been, according to the terms of the original contract, it is liable to him for the increased cost or extra work. (*Messenger* v. *City of Buffalo*, 21 N. Y. 196; *Mulholland* v. *Mayor*, 113 N. Y. 631; *Horgan* v. *Mayor*, 160 N. Y. 516.)

In *Town and Country Engineering Corp.* v. *State* (46 N. Y. S. 2d 792, 800) the court said: '' The Contractor was entitled to a reasonable opportunity to perform his contract without obstruction or interference, and the State is liable for the failure to furnish that opportunity unless by express language in the contract, it has relieved itself from such liability.'' To same effect is the case of *Garofano Constr. Co.* v. *State of New York* (183 Misc. 1080).

The rule may be assumed to be well settled by the authorities, and it is founded in justice, that, where a party has assumed a positive obligation of the nature of this claimant's agreement, a corresponding obligation, if not expressed in terms, will, nevertheless, be implied as resting upon the other party, to whom the agreement runs, to be answerable for all losses caused by delays, which his control of the work should make him responsible for, either because he might have prevented them, or because the contract itself was not so framed as, in the event of their happening either to exempt him, or to permit the inference of an intention that responsibility should rest elsewhere. (*Norcross* v. *Wills,* 198 N. Y. 336, 341.)

Delays in violation of the implied covenant to furnish contractor reasonable opportunity to perform his contract without interference are nonactionable only if they are within contemplation of the parties when the contract is made, and such contemplation involves such delays as are reasonably foreseeable, arise from contractor's work or those specifically mentioned in the contract. (*Town and Country Engineering Corp.* v. *State,* 46 N. Y. S. 2d 792, 800.)

Whether a delay is so great as to be beyond the contemplation of the parties to the contract is a question of fact to be determined in the light of all the surrounding circumstances.

(*American Bridge Co., Inc.,* v. *State of New York,* 245 App. Div. 535.)

In the final analysis, as was stated by Chief Judge CRANE in *Cauldwell-Wingate Co.* v. *State* (276 N. Y. 365, 376), each case necessarily depends upon its own facts. We conclude, therefore, that the question as to the right of claimant to recover herein for damages occasioned by delays within the contract period must be answered in the affirmative with the limitations and restrictions hereinafter discussed and necessitated by the circumstances of the instant case.

With respect to the delay of ten days to two weeks caused by the attempted redesigning of the north abutment by the State's engineer on the contract site, and the subsequent failure of the State to approve such redesigning, we are of the opinion that thereby the State directly interfered with claimant's performance of the work under the contract, obstructed its execution, and committed a breach of its contract, and under such circumstances, a recovery for the damages sustained by the claimant by reason thereof should be allowed and is allowed in accordance herewith in the accompanying decision. (*Waples Co.* v. *State of New York,* 178 App. Div. 357, *supra; Wright & Kremers, Inc.,* v. *State of New York,* 238 App. Div. 260, affd. with modification, 263 N. Y. 615.)

We appreciate the fact that in *Wright & Kremers, Inc.,* v. *State of New York* (*supra*) damages for delays occasioned by the State because of its revision of plans, drawings and specifications were denied in view of the provisions in the contract in said case exempting the State from liability for such delays. While under the theory of the State's defense, no such argument is urged upon us in the instant case, it would not, in our opinion, if it were urged herein, alter our decision as to the immediately foregoing part of claimant's claim since we are satisfied that it accrued through direct interference on the part of the State, bringing it within the " direct interference " exception set forth in the *Wright & Kremers* case (*supra,* p. 261).

Paragraph four of the contract herein provides among other things that: " The State, however, reserves the right to make such additions, deductions, or changes as it deems necessary, making an allowance or deduction therefor at the prices named in the proposal for this work, and this contract shall in no way be invalidated."

As was stated in *Kinser Construction Co.* v. *State of N. Y.* (204 N. Y. 381, 391): " No limitation other than necessity is

placed upon the right to make additions, deductions and changes in the work, plans and specifications. Necessity is the sole basis and standard for the protection of both parties. On the one hand, it protects the contractor from arbitrary, capricious or unreasonable action by public officers, and on the other it protects the state from unforeseen conditions, which would render the work as originally planned impossible of performance. The necessity need not be absolute, but it must be reasonable, for the law writes the word ' reasonably ' before the word ' necessary ' in the contract as unavoidably within the contemplation of the parties, when the extent of the work is considered. (*Jerome* v. *Ross*, 7 Johns. Ch. 315, 340.) ''

There is not a scintilla of evidence to prove that the attempted alteration or change in the design of the north abutment was reasonably necessary, and it appears that such action on the part of the State was arbitrary and capricious. (*Town and Country Engineering Corp.* v. *State*, 46 N. Y. S. 2d 792, *supra; Kinser Construction Co.* v. *State of N. Y.*, *supra*.) The fact that the attempted redesigning was never approved by the State, we feel, adds weight to our conclusion herein.

A contract will not be construed as to put one party at the mercy of another. (*Gillet* v. *Bank of America*, 160 N. Y. 549; *Wilson & English Constr. Co.* v. *N. Y. C. R. R. Co.*, 240 App. Div. 479, *supra*.)

In *A. W. Banko* v. *State* (46 N. Y. S. 2d 558) an examination of the record discloses that an award was made to the claimant for the fair and reasonable rental value of equipment, and for wages of employees together with overhead and profit items thereon, as and for claimant's loss and damage sustained by claimant by reason of a stoppage of work for a period of time entirely within the contract period and previous to the termination date specified in the contract.

We consider now particularly the delay of one week and the subsequent shutting down of claimant's plant for that period of time, occasioned when unsuitable subsoil was encountered in the work of excavating the south approach to the bridge. When this condition was found, test borings of the soil were made by the State, and about one week elapsed before the State decided to further excavate beyond the unsuitable soil and gave orders to the claimant to proceed. Extra excavation at this point was actually done by claimant. From the record it does not appear that the procedure employed by the State in this connection and the delay resulting therefrom was unrea-

sonable or a direct interference in view of the circumstances. The claimant has not, in our view, established by a fair preponderance of the evidence its right to recover on this particular item, and we make no award therefor.

The other delays complained of by claimant resulting in the shutting down of claimant's plant and constituting a part of the aggregate one month's delay alleged herein, some of which have been hereinbefore mentioned, while disturbing and undoubtedly impeding claimant's work program, we feel are such as might be termed incidental delays — reasonable and necessary delays, within the contemplation of the parties for which the State is not responsible. For that reason we make no award therefor.

The fair and reasonable rental value of claimant's plant, machinery and equipment during the period of its enforced idleness is the proper measure of damages herein. (*Town and Country Engineering Corp.* v. *State,* 46 N. Y. S. 2d 792, *supra; Immick Co.* v. *State of New York,* 251 App. Div. 919; *Garofano Constr. Co.* v. *State of New York,* 183 Misc. 1080, *supra.*) The rental value for this period of one month was established by claimant's witnesses at $2,000, and the State has not disputed it. The fact that claimant itself owns part of the plant and rented the rest does not matter as claimant's proof established that it could have released the rented equipment and thereby saved the rent that it was paying, and that its own equipment could have been put to other gainful use.

Claimant's testimony is to the effect that the total delay herein amounted to one month. This is not qualified by any other testimony in the case. We must assume, therefore, that it means a calendar month, and our computations are made on that basis. (General Construction Law, §§ 30, 31.) In the absence of qualifying testimony by the State, claimant's method of proof and measure of damages are accepted. (*Arc Engineering Corporation* v. *State,* 40 N. Y. S. 2d 354, affd. 267 App. Div. 797, affd. 293 N. Y. 819, motion for reargument denied 294 N. Y. 656.)

There remains for us to consider what we have designated herein as the second item of damages, i.e., the item for extra work performed by claimant as hereinbefore noted. This work consisting in the main of extra excavation of unsuitable material on the south approach, the placing and compaction of additional back fill behind the north and south abutments, the enlarging of pipe recesses and the driving of extra test piles was indeed extra work and was not within the terms of the contract, plans

and specifications, and was not contemplated by the parties. It was performed by the contractor to the amount hereinbefore stated under protest. An award is made, therefore, in accordance herewith in the accompanying decision.

No case cited to us herein, in our view, constitutes authority for our holding other than as we have herein. We distinguish on the facts, from the instant case particularly, the case of *United States* v. *Blair* (321 U. S. 730, rehearing denied 322 U. S. 768) upon which case the defendant appears to rely to a great extent herein.

In the *Blair* case (*supra*), the Supreme Court of the United States held that where a Government construction contract merely obligated a general contractor to co-operate with other Government contractors and to refrain from committing or permitting any act which would delay other contractors and imposed liquidated damages on the general contractor for delay in completing his work, unless due to such unforeseen causes as acts of the Government, the contract did not impose the obligation on the Government to aid the general contractor in completing his contract prior to the stipulated completion date; and the general contractor was not entitled to damages for the Government's failure to compel accelerated performance by another contractor.

It held further that nowhere in the contract involved in the case is there spelled out any duty on the part of the Government to take affirmative steps to prevent a contractor from unreasonably delaying or interfering with the work of another contractor to finish ahead of his schedule. In the instant case the acts complained of are the affirmative acts of the State itself; there are no other parties involved, and there is no question of the default of any party except that of the State. Because of the foregoing, we do not have to pass upon the interesting question of the binding effect of the decisions of the United States courts, including United States Supreme Court, as precedents in our State courts.

We deny all motions by the State for a dismissal of what we have designated herein for the sake of convenience as the first item of claimant's claim, made at the termination of claimant's case, as well as all motions made at said time and during the course of the trial to strike out all testimony adduced by the claimant with reference to its first item aforesaid, upon which said motions aforesaid decision was reserved by the court upon the trial, with an exception to the State in each instance.

We have considered as part of the record herein all the testimony and exhibits therein contained concerning which motions were made and decision thereon was reserved during the trial, and all said motions are hereby denied with an exception in each instance to the party claimed to be aggrieved thereby.

We deny, except as to the amount awarded in the accompanying decision pursuant hereto, the motion of the claimant for judgment and interest thereon made at the conclusion of the case herein, with an exception thereto to the claimant.

Decision accordingly.