OPINION OF THE COURT
David B. Saxe, J.
The issue that is presented in this small claims proceeding is whether a discharged commodities broker is entitled to earned commissions on executed trades with customers who have not timely furnished the broker’s employer with fully executed copies of customer account agreements, an apparent condition to the broker’s recovery of such commissions from his employer.
Mr. Shuster, the claimant, is a commodities broker or account executive. His former employer, the defendant First National Monetary Corporation (FNMC), is a dealer in precious metals and is registered with the Commodities Futures Trading Commission. Mr. Shuster began work with FNMC in August, 1981, as an account executive. He signed an “Account Executive Agreement” which incorporated by reference the FNMC Executive Operations and Compliance Manual (Manual).
Prospective customers of FNMC are first sent materials describing commodities trading. A follow-up call is then made by an account executive who has been supplied with *1059 “Lead Cards”. Included with the descriptive materials sent to the prospective customer is a “Customer Account Agreement” which sets out the rights and liabilities of the parties in commodity trading and discloses to customers the risks attendant to trading in the precious metals market. According to the Manual each customer is permitted to effect one initial trade prior to the time when the FNMC home office has received an executed customer account agreement from the particular customer.
The claimant’s employment was terminated by FNMC on November 20, 1981. This action involves commissions on trades made by the claimant prior to the date of termination, but for which an executed customer agreement had not been received by the FNMC home office within five days of that date.
The Manual states:
“compensation procedures for terminated account
EXECUTIVES.
“Terminated account executives are entitled to receive payment of net commissions and bonuses earned in accordance with company policies and procedures. Additionally, the following conditions must be met: * * * d) Properly executed customer account agreements and compliance letters must be received by FNMC’s home office no later than five (5) business days from the date of termination” of employment.
Accordingly, when the claimant demanded payment of earned commissions, the defendant refused payment because the customer agreements had been received more than five days after the claimant’s termination, or not at all.
The “Account Executive Agreement” contains two conditions relating to the payment of earned commissions to account executives. The first condition applies to all account executives (both terminated and nonterminated) and conditions payment of earned commissions upon the receipt by FNMC of the customer’s account agreement. The second condition applies only to terminated account executives. It is similar to the first condition except that a time limitation (i.e., five days) is imposed on the receipt of the customer agreements.
*1060 Application of the second condition means that the terminated account executive is entitled only to his earned commissions on executed trades for which customer agreements were received by FNMC within five days of his termination. After the expiration of these five days, the account executive is no longer entitled to commissions for pretermination trades. This is so notwithstanding the fact that a customer agreement may be received by FNMC after the five-day. period has elapsed. If the account executive’s employment had not been terminated, the five-day rule would not apply. In this case, the validity of the second condition is in issue.
It is FNMC’s contention that its rule conditioning payment of commissions to a terminated account executive upon receipt of applicable customer account agreements within five days of the executive’s termination is an enforceable contractual condition.
“A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.” (Restatement, Contracts 2d, § 224, p 160; Noble v Higgins, 214 App Div 135, affd 243 NY 538.)
To buttress its contention that the terms of the customer account agreement create a condition, FNMC relies on the terms of the Manual and what is perceived by them as the needs of their business and obligation to protect the trading public.
The second condition, according to FNMC, serves a public interest as follows: The conditional payment of commissions is an incentive to the account executive to make certain that the customer promptly returns the executed document. This, according to FNMC serves to indirectly protect the customer since one of the purposes of the customer agreement is to apprise customers of the risks inherent in this type of investment market.
Technically, although the customer agreement serves a legitimate business and public interest, there is no reason to require its receipt by FNMC as a prerequisite to payment to account executives of earned commissions. The simple fact is that FNMC permits the account executive to *1061 make at least one trade for each customer before the customer agreement is required to be returned.
A gross commission for each trade is charged to the customer by FNMC. Out of this sum, FNMC allocates to the particular account executive a commission for the transaction, known as a net commission. The company receives its gross commission from the customer regardless of whether the customer has returned the executed customer agreement or not. However, the account executive is deprived of his net earned commission by FNMC if the customer’s agreement is not received. It must be assumed that FNMC retains, in addition to its own earned gross commissions, the net commission for its own account and does not remit these sums to the custopier. If FNMC was truly concerned with compliance and disclosure of trading risks, its policy would be not to permit any transaction to proceed before it has received an executed customer agreement.
In the usual case, placing the onus of obtaining the return of the customer agreement upon the nonterminated account executive may serve a legitimate business function because it encourages him (if he desires payment of his commissions) to contact customers and remind them of their obligation to return the completed document. In this manner, the company receives the document promptly and the account executive is then paid his commission. Therefore, the first condition (i.e., the requirement that customer agreements be received prior to payment by FNMC of earned commissions) is valid as applied to nonterminated account executives.
However, this reasoning is inapplicable to the terminated account executive. In this case the claimant was terminated without advance notice. Upon termination, account executives are obligated to return to FNMC all customer lists, lead lists, account cards and all other such property which are considered to be the exclusive property of FNMC. There was no testimony that claimant Shuster failed to turn over these items.
I hold that under the circumstances, it was FNMC’s duty to contact these customers on behalf of the claimant because he had already returned the customer lead lists and *1062 had no means with which to contact these customers. FNMC cannot be permitted to remain inactive and then refuse the terminated broker his earned commissions on the ground that the customer agreements were not received by the home office within the allotted five-day period. To uphold this provision would be contrary to public policy since it would encourage the company not to contact customers during this time period so that it might retain its own commissions as well as those properly owing to the account executive.
If a customer agreement is not received promptly by the home office, a nonterminated account executive still receives his earned commissions whenever the agreement is received irrespective of the time delay involved. However, in the case of a terminated account executive, late receipt (i.e., more than five days after termination) means that the account executive would forfeit all rights to such payment. This distinction is crucial. I hold that this rule is unduly harsh on the terminated employee, especially (1) in light of the fact that he has had to surrender his customer records and therefore is unable to identify and contact the customers who have not returned their agreements; (2) the excessively short time period involved in which to obtain the customer agreements; and (3) that such a rule reduces the incentive for FNMC to contact the customers and thereby operates to permit it to keep the net commission. Furthermore, under this condition the terminated employee has no way of knowing whether the customer agreement was actually even received, and, if so, whether it was within five days of termination.
It is accepted law that where a condition is a material part of the bargained exchange between the parties, such as the condition of payment expressly imposed by FNMC, payment will generally not be enforceable unless the condition has occurred. (Mascioni v I.B. Miller, Inc., 261 NY 1.)
Before liability can be found to exist based upon a promise qualified by a condition, the condition must be fulfilled, unless it is waived or excused. (10 NY Jur, Contracts, § 298.) Since the condition was not fulfilled by the *1063 claimant, FNMC’s liability depends on whether the condition was waived or excused.
If the occurrence of the events leading to the performance of the condition is under the control of FNMC, then FNMC cannot rely on the nonoccurrence of the condition to defeat its obligation. (Allan v Hyland, 30 Misc 2d 632, 635, affd 15 AD2d 721; Fifty States Mgt. Corp. v Niagara Permanent Sav. & Loan Assn., 58 AD2d 177.)
FNMC received the benefits of the services rendered by the claimant, including the gross commissions. Upon his termination, they reclaimed all of the customer lists in his possession. By their action, they prevented him from fulfilling the condition they imposed upon him. In short, I hold that they therefore assumed the duty to contact customers regarding the return of the customer agreements.
At a minimum, FNMC should have introduced evidence at the trial to substantiate any claim that they attempted in good faith to fulfill this condition relating to the return of customer agreements within the allotted five-day span. This they did not do, nor did they ever claim to have made such attempts. FNMC’s silence on this point permits me to infer that they did nothing, for if they had done otherwise, I would have expected FNMC to produce pertinent evidence or testimony. (Orange & Rockland Utilities v Amerada Hess Corp., 59 AD2d 110, 119; Richardson, Evidence [Prince, 10th ed], § 222.)
FNMC cannot now hold the claimant responsible for an obligation they assumed and took no steps to satisfy. Consequently, I hold that the condition under which customer agreements must be received within five days of termination as a prerequisite to FNMC’s obligation to compensate the claimant is excused. Their duty to pay the claimant for earned commissions is therefore absolute. Since they have not paid, they are in breach.
A party to a contract is obliged not to hinder the performance required under the contract by the other party. (Ryder Bldg. Co. v City of Albany, 187 App Div 868.) In this case any resulting delay in the receipt of the customer agreements was due not to the claimant’s conduct but, instead, to FNMC’s delay or failure in follow-up with its *1064 customers. FNMC prevented the claimant from satisfying the condition by its demand that the claimant return all customer lists. On the basis of this analysis, and the fact that FNMC nevertheless received and retained the gross commissions, I hold that the five-day condition has been excused and is not enforceable by FNMC. (See Allan v Hyland, supra.)
Furthermore and alternatively, I hold that this provision which limits the terminated account executive’s recovery of his portion of the commissions received and retained by FNMC to those for which a customer agreement was received within five days following his termination is unconscionable.
The doctrine of unconscionability, while incapable of precise definition, is based on public policy considerations and “has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party” (Williams v Walker-Thomas Furniture Co., 350 F2d 445, 449).
This concept has developed in order to prevent the unjust enforcement of onerous contract terms which the party is able to impose because of a significant disparity in bargaining powers. (Rowe v Great Atlantic & Pacific Tea Co., 46 NY2d 62, 68.)
The doctrine of unconscionability may be applied in this case (see Matter of Friedman, 64 AD2d 70,84), even though the setting involves a commercial dispute and not a consumer-oriented transaction. (See, generally, Campbell Soup v Wentz, 172 F2d 80; Fleischmann Distilling Corp. v Distillers Co., 395 F Supp 221.)
To be aplicable, the court must find that the provision was unconscionable, as a matter of law, at the time the contract was formed. (Williams v Walker-Thomas Furniture Co., supra.) I hold that it was. Factors considered in reaching this result include not only the one-sidedness of the bargaining process, but also the effect of forfeiture on the terminated account executive as well as FNMC’s purpose in exacting this condition.
*1065 It is apparent that this provision, which appeared inconspicuously on page 54 of the company Manual, was a stated policy of FNMC and, as such, was not subject to negotiation at the inception of employment.
The defendant offered no substantial reasons to support its contention that the five-day deadline was commercially reasonable or justifiable. While the requirement of receipt of customer agreements may ordinarily be a result of a legitimate business decision, I hold that the additional requirement imposed upon terminated, as opposed to continuing, employees by the five-day condition is totally arbitrary and bears no reasonable relation to the business risks involved. The effect of this condition is to unjustly and unreasonably deprive the terminated account executive of commissions earned on completed trades prior to his termination and to place these already collected sums in the hands of FNMC. This result is oppressive. Under the facts and circumstances here, I hold the five-day condition to be unconscionable. It may not be relied upon by FNMC as a condition of paying terminated brokers their earned commissions.
In this case, the claimant sued for unpaid commissions in the amount of $1,500. At trial, the claim was reduced to $1,100. The claimant is entitled to a judgment in this amount.